1   Margaret A. McLetchie
    McLetchie Law
2   1851 E. First Street #900
    Santa Ana, CA 92705
3   T: (714) 232-8675
    E: maggie@nvlitigation.com
4   CA Bar No.: 223240
5
    Carrie Goldberg
6   C.A. GOLDBERG, PLLC
    16 Court Street, Suite 2500
7   Brooklyn, NY 11241
    T: (646)666-8908
8   E: carrie@cagoldberglaw.com
9   (pro hac vice pending)
    *Attorneys for Plaintiff, Michelle Suzanne Hadley*
10

11              **UNITED STATES DISTRICT COURT**
                **CENTRAL DISTRICT OF CALIFORNIA**
12

| | |
|---|---|
| 13 MICHELLE SUZANNE HADLEY, an individual, | **Case. No.:** 8:18-cv-01831-DOC-KES |
| 14 | |
| 15        Plaintiff,<br>    vs. | **FIRST AMENDED COMPLAINT FOR DAMAGES and DEMAND FOR JURY TRIAL** |
| 16 CITY OF ANAHEIM, JAMES PEWSEY as an individual and in his official capacity, WILLIAM SEGLETES as an individual and in his official capacity, MICHAEL LEE as an individual and in his official capacity, MICHAEL CUNHA as an individual and in his official capacity, ANGELA MARIE DIAZ, an individual, IAN RICHARD DIAZ, an individual, DOES 1-10, inclusive,<br><br>       Defendants. | 1. 42 U.S.C. § 1983 Civil Rights Violation (Excessive Force)<br>2. 42 U.S.C. § 1983 Civil Rights Violation (Unreasonable Seizure of Plaintiff)<br>3. 42 U.S.C. § 1983 Civil Rights Violation (Unreasonable Seizure of Property)<br>4. 42 U.S.C. § 1983 *Monell* Liability (Unconstitutional Custom, Practice, Policy)<br>5. 42 U.S.C. § 1983 *Monell* Liability (Failure to Train)<br>6. 42 U.S.C. § 1985 Conspiracy to Interfere with Civil Rights<br>7. California Civil Code § 52.1—Civil Rights Violations<br>8. False Imprisonment & False Arrest<br>9. Battery |

1

10. Assault
11. Intentional Infliction of Emotional Distress
12. Negligence
13. Malicious Prosecution
14. Defamation
15. Civil Conspiracy

Plaintiff, MICHELLE SUZANNE HADLEY by way of complaint against the Defendants hereby complains and alleges as follows:

## NATURE OF THE ACTION AND PRELIMINARY STATEMENT

1.     This is a civil rights action brought under, *inter alia*, 42 U.S.C. § 1983 and 42 U.S.C. § 1985 to vindicate Plaintiff Michelle Hadley's civil rights. This action arises from false arrests, detentions, seizures and other liberty deprivations Plaintiff Michelle Hadley suffered as a result of Defendants' acts and omissions.

2.     At its heart, this is a case about the "blue wall of silence," *i.e.* law enforcement officers and officials enabling fellow officers to violate civilians' rights.

3.     Defendant the Anaheim Police Department ("APD") and its officers abdicated their duties to adhere to investigative norms, instead conspiring to do the bidding of a corrupt federal marshal, Defendant Ian Diaz ("IAN DIAZ"). They appear to have willingly become IAN DIAZ's weapon in his tortious campaign to ruin the life of his ex-girlfriend, Plaintiff Michelle Hadley.

4.     Michelle Suzanne Hadley ("MS. HADLEY"), age 30, experienced everybody's worst nightmare. She was arrested and charged with ten felonies and a misdemeanor for heinous crimes she did not commit. Facing life in prison, she spent 88 days

2

in jail charged as a sex offender before law enforcement officers were forced to correct their grave mistake. MS. HADLEY had been framed by her abusive ex-boyfriend, IAN DIAZ, a federal marshal so hell-bent on punishing her after their relationship dissolved that he even got his new wife, Defendant ANGELA DIAZ ("ANGELA DIAZ"), involved.

5.     From May through July 2016, IAN and ANGELA DIAZ made dozens of false police reports implicating MS. HADLEY in crimes she did not commit. IAN and ANGELA DIAZ filed for restraining orders and repeatedly impersonated MS. HADLEY to send violent and threatening emails to ANGELA DIAZ. Pretending to be MS. HADLEY, they responded to ads on the Internet directing strangers to ANGELA DIAZ to fulfill their rape fantasies. This culminated in ANGELA DIAZ falsely claiming she had been attacked in her garage by a masked man MS. HADLEY had purportedly directed to ANGELA DIAZ's home.

6.     But this was not some sort of sophisticated cybercrime. IAN and ANGELA DIAZ were sloppy. The emails they forwarded to APD detectives were clearly doctored. Sometimes the "From" line of a forwarded email showed two names. Other times they would botch the email address or invert the sender and recipient. For many of the emails purportedly sent by MS. HADLEY, they did not even mask their IP address; this unmasked IP address made plain that these emails were sent from ANGELA and IAN DIAZ's home.

7.     On June 24, 2016, MS. HADLEY was unlawfully arrested without a warrant or probable cause based entirely on unverified, spoofed, and doctored digital evidence forwarded to APD officers by IAN and ANGELA DIAZ.

8.     At the time of MS. HADLEY's first arrest, APD officers possessed ample evidence that IAN DIAZ had doctored the evidence he forwarded and that he—not MS.

HADLEY—was the person inviting strangers on Craigslist to act out rape fantasies on ANGELA DIAZ. APD officers also had evidence that many of the emails purportedly sent by MS. HADLEY originated from the static IP address of IAN DIAZ's home. At the time of her second arrest on July 14, 2016—for which MS. HADLEY was held in custody for 88 days on a $1 million bail—APD officers had also seen surveillance footage from IAN and ANGELA DIAZ's garage which entirely disproved ANGELA DIAZ's story. The footage showed that, in fact, there was no activity at the time and location where ANGELA DIAZ said she has been attacked.

9.     APD officers did not just ignore the evidence, they ignored MS. HADLEY's repeated, desperate pleas for help, including entreaties to the Ontario Police, the Claremont Police, the FBI, and the DOJ. Four times she called a detective at the APD to follow up on her reports, expressing urgent concern that she was being impersonated online and that her ex-boyfriend might be plotting against her. Yet that detective—who was on the scene when MS. HADLEY was arrested—admitted that he had not called her back.

10.     APD detectives willfully turned a blind eye to IAN DIAZ's obviously false reports because he was a fellow law enforcement officer. A career cop, upon information and belief, he often filed the false reports against MS. HADLEY in uniform.[1] Each report stated that he was a federal marshal employed by the US Marshal Service. He was friendly with the detectives investigating MS. HADLEY, texting and emailing with them. He also used local police like his own personal concierge service, dispatching officers to unlawfully intimidate and threaten a process server, as well as serve a restraining order on MS. HADLEY.

11.     Months into MS. HADLEY's detention, IAN DIAZ finally confessed to

---

[1] MS. HADLEY recalls IAN DIAZ frequently wearing his uniform when not on duty.

APD officers, admitting that MS. HADLEY was innocent all along. Yet, reflecting the APD's willingness to turn a blind eye to a fellow officer's corruption and wrongdoing, IAN DIAZ was never charged with a crime. Only his wife, ANGELA DIAZ, was.

12.     On January 9, 2017, the CITY OF ANAHEIM exonerated MS. HADLEY. This was six and a half months after her first arrest. By then, MS. HADLEY had lost her job, dropped out of business school, been forced to move in with her parents, accrued extraordinary debt, and developed grave post-traumatic stress disorder (PTSD). Moreover, her reputation was shattered because of the sordid history of the case and all the inaccurate information law enforcement released about its eventual resolution. Press releases from the Orange County DA's office presented the case as a sophisticated computer crime and congratulated APD investigators for cracking the case. The APD's sound bites likewise gushed about the complexity of the case and diligence of its investigators. The reality was far different. Investigators dodged common-sense and ignored voluminous early evidence showing MS. HADLEY'S innocence. They failed to apply rudimentary norms of verifying, collecting and reviewing digital evidence. Instead, they bent over backwards to believe their fellow law enforcement officer despite the overwhelming evidence incriminating him.

13.     The APD never had probable cause to arrest MS. HADLEY and therefore violated her constitutional rights by arresting and jailing her.

14.     APD officers knew all along—or should have known—that IAN and ANGELA DIAZ were framing MS. HADLEY. However, even after the conspiracy was revealed, the CITY OF ANAHEIM continued to pull rank for IAN DIAZ; in doing so, the APD has tried to cover up its own complicity in the wicked scheme to frame MS. HADLEY.

15.     Thus, MS. HADLEY alleges and complains that she is not only the victim

of a vindictive ex-boyfriend (a corrupt law enforcement officer) and his new wife, but a victim of police corruption, incompetence, and the blue wall of silence that enabled them to successfully deprive MS. HADLEY of her freedom and cause other serious and long-lasting harm.

### JURISDICTION & VENUE

16.     This Court has jurisdiction over this action pursuant to U.S.C. §§ 1331 and 1343(a) because it is being brought to obtain compensatory and punitive damages for the deprivation, under color of state law, of the rights secured by the United States Constitution, pursuant to 42 U.S.C. §1983, §1985, and §1988. This action is brought pursuant to the Fourth and Fourteenth Amendments to the United States Constitution, and the laws and Constitution of the State of California.

17.     Plaintiff further invokes this Court's supplemental jurisdiction, pursuant to 28 U.S.C. §1367(a), to hear and decide claims arising under state law related to claims over which this Court has original jurisdiction.

18.     Venue is proper, pursuant to 28 U.S.C. §1391(b)(1)-(2), because the Defendants reside in this judicial district and the events or omissions giving rise to Plaintiff's claims occurred in this judicial district.

### PARTIES

19.     Plaintiff, MICHELLE SUZANNE HADLEY ("Plaintiff," or "MS. HADLEY") is a citizen of the United States and a competent adult.

20.     Defendant CITY OF ANAHEIM is a municipal corporation, duly organized and existing under the laws of the State of California.

21.     At all relevant times, the CITY OF ANAHEIM operated and operates the

Anaheim Police Department (APD) under its authority.

22.     At all relevant times, the CITY OF ANAHEIM was responsible for supervising, enacting, and/or enforcing the APD's conduct, policies, and practices as well as addressing the absence of needed policies, practices, and/or training.

23.     At all relevant times, the CITY OF ANAHEIM was also responsible the hiring, retention, supervision, and training of employees and agents of the CITY OF ANAHEIM, the APD, and possibly other relevant agencies. Specifically, at all relevant times, the CITY OF ANAHEIM was the employer of Defendants JAMES PEWSEY, WILLIAM SEGLETES, MICHAEL LEE, and MICHAEL CUNHA, as well as certain APD Officers who also violated MS. HADLEY's rights but whose names are currently unknown to MS. HADLEY.

24.     At all times material herein, Defendants WILLIAM SEGLETES, JAMES PEWSEY, MICHAEL LEE, and MICHAEL CUNHA (the "OFFICER DEFENDANTS") (as well as the to-be-identified CITY OF ANAHEIM employees, DOES 1-10)[2] in doing the acts or omissions hereinafter described, acted under color of state law and within the course and scope of their employment with Defendant CITY OF ANAHEIM, by virtue of their employment with the APD. The OFFICER DEFENDANTS are sued in their individual capacities, including, where applicable, in their capacity as supervisors based on supervisory liability.

25.     At all material times, these individual OFFICER DEFENDANTS held titles and participated generally as follows in this matter as described below.

        a.      Defendant WILLIAM SEGLETES ("SEGLETES"), at all relevant

---

[2] As used herein, "ANAHEIM DEFENDANTS" refers collectively to the OFFICER DEFENDANTS, DOES 1-10, and the CITY OF ANAHEIM.

times mentioned herein, was employed by CITY OF ANAHEIM as a Police Detective for the Anaheim Police Department assigned to the sexual assault detail. At all relevant times he was assigned to assist in the investigation of MS. HADLEY, and was responsible for complying with all APD policies, procedures, supervision, and training, especially in regard to interviewing witnesses, storing, processing, analyzing, reviewing, updating, investigating, and verifying evidence.

b.      Defendant JAMES PEWSEY ("PEWSEY"), at all relevant times mentioned herein, was employed by CITY OF ANAHEIM as a Police Detective for the Anaheim Police Department in the Investigations Division. At all relevant times he was assigned to assist in the arrest and investigation of MS. HADLEY and was responsible for complying with all APD policies, procedures, supervision, and training, especially in regard to interviewing witnesses, storing, processing, analyzing, reviewing, updating, investigating, and verifying evidence.

c.      Defendant MICHAEL LEE ("LEE"), at all relevant times mentioned herein, was employed by CITY OF ANAHEIM as a Police Detective for the Anaheim Police Department. At all relevant times he was assigned to assist in the arrest and investigation of MS. HADLEY and was responsible for complying with all APD policies, procedures, supervision, and training, especially in regard to interviewing witnesses, storing, processing, analyzing, reviewing, updating, investigating, and verifying evidence.

d.      Defendant MICHAEL CUNHA ("CUNHA"), at all relevant times mentioned herein was employed by CITY OF ANAHEIM as a Police Detective for the Anaheim Police Department assigned to the sexual assault detail. Beginning on June 14, 2016 he was the lead detective into the investigation of MS. HADLEY and was also involved

in the investigation of Defendant ANGELA DIAZ. He was responsible for complying with all APD policies, procedures, supervision, and training, especially in regard to interviewing witnesses, storing, processing, analyzing, reviewing, updating, investigating, and verifying evidence.

e.      Defendants DOES 1-10 were responsible or were delegated with the responsibility of properly inputting, processing, reviewing, comparing, updating, investigating, analyzing, verifying and communicating about evidence of crimes, including those in a supervisory capacity. Defendants named herein as DOES 1-10 could include, but are not necessarily limited to:

i. Various CITY OF ANAHEIM employees, employed between August 2015 to present;

ii. CITY OF ANAHEIM employees involved in processing and analyzing search warrants and arrest warrants;

iii. CITY OF ANAHEIM employees involved in creating policies and procedures, particularly the practices and customs relating to the collection, investigation, and analysis of electronic evidence;

iv. Any and all employees, agents, or contractors (independent or otherwise) of THE CITY OF ANAHEIM, private individuals or employees of any other to-be-identified agencies that directly or indirectly caused MS. HADLEY to be wrongfully seized, wrongfully detained, falsely detained, wrongfully searched, or otherwise subjected to any liberty deprivation, as more fully described herein.

26.      Defendant IAN DIAZ is a competent adult over the age 18 and resides in Anaheim, California in Orange County.

27.    Defendant ANGELA DIAZ is a competent adult over the age 18 and, according to the website of the California Department of Corrections, as of December 17, 2018, is incarcerated at McFarland Female Community Reentry Facility in McFarland, California.

28.    The Defendants named above, including DOES 1-10, are sued in their individual capacities, including, where applicable, in their supervisory capacities as supervisors.

29.    The true names or capacities, whether individual, corporate, associate, or otherwise, of Defendants named herein as DOES 1-10 are unknown to Plaintiff, who therefore sues those Defendants by said fictitious names. Plaintiff will amend this Complaint to reflect said Defendants' true names and capacities when the same have been ascertained. Plaintiff is informed, believes, and thereon alleges that all defendants sued herein as DOES are in some manner responsible for the acts, omissions, and injuries alleged herein.

30.    Plaintiff alleges, on information and belief, that each of the Defendants sued herein was intentionally, recklessly, negligently, and/or otherwise responsible in some manner for the events and happenings hereinafter described, and proximately caused injuries and damages to Plaintiff. Further, certain DOE Defendants were at all material times responsible for the hiring, training, supervision, and discipline of the other Defendants, including both the individually named and DOE Defendants.

31.    Plaintiff is informed, believes, and alleges that, except as otherwise specifically alleged, each of the Defendants was at all material times an agent, servant, employee, partner, joint venture, co-conspirator, and/or alter ego for the remaining Defendants, and in doing the things alleged here, was acting within the course and scope of

that relationship. Plaintiff is further informed, believes, and alleges that, except as otherwise specifically alleged, each of the Defendants here gave consent, aid, and assistance to each of the remaining Defendants, and ratified and/or authorized the acts or omissions of each Defendant as alleged here. At all material times, each Defendant was an integral participant, jointly and fundamentally engaged in constitutionally violative, unlawful and tortious activity, resulting in the deprivation of Plaintiff's constitutional rights and other injuries to Plaintiff.

32.     The acts and omissions the ANAHEIM DEFENDANTS were at all material times pursuant to the actual customs, policies, practices, and/or procedures (or lack thereof) of the CITY OF ANAHEIM and/or the APD.

33.     At all material times DEFENDANTS SEGLETES, PEWSEY, LEE, CUNHA, and DOES 1-10 acted under color of the laws, statutes, ordinances, and regulations of the State of California.

34.     A proper and timely tort claim was presented to the CITY OF ANAHEIM by Plaintiff, pursuant to Government Code §910 et seq., and this action, as it relates to the state law claims asserted against the CITY OF ANAHEIM, was thereafter timely filed within the applicable statutes of limitation.

35.     This complaint may be pleaded in the alternative, pursuant to Rule 8(d)(2) of the Federal Rules of Civil Procedure.

## **GENERAL ALLEGATIONS AND BACKGROUND**

### ***Michelle Hadley's Loss of Liberty***

36.     Prior to October 2013, the month MS. HADLEY met Defendant IAN DIAZ, MS. HADLEY was living a straight and narrow life. She was 26 and working as a marketing

executive for an insurance management company in Orange County, California. MS. HADLEY was the quintessential upstanding citizen. Her only run-in with law enforcement was one traffic ticket she was issued for going five miles above the speed limit. She graduated Phi Beta Kappa and summa cum laude from Dickinson College. She loved her job and her excellent work ethic was rewarded with raises and bonuses. She was considering going to business school.

37.    In October 2013, Defendant IAN DIAZ, then age 36, was a United States Marshal at a federal courthouse in Los Angeles. MS. HADLEY and IAN DIAZ met each other through a dating app and were immediately smitten with each other. On their second date, IAN DIAZ declared his love for MS. HADLEY and gifted her with a down-payment for an annual pass to his favorite place on earth: Disneyland.

38.    MS. HADLEY was flattered by IAN DIAZ's attention and protectiveness. It was a stark contrast from prior relationships: MS. HADLEY believed IAN DIAZ had her best interests at heart, and he paraded his young, smart, thin girlfriend around his federal law enforcement friends. Gradually, the relationship worsened as IAN DIAZ became more and more controlling. IAN DIAZ dictated MS. HADLEY's style (crop tops, a navel piercing, and long acrylic nails), how much she drank (a lot), and the hours she slept.

39.    When he wasn't with her, IAN DIAZ monitored MS. HADLEY. He had her buy Apple products and then programmed the settings, so he could access them too. He accessed MS. HADLEY's computer without authorization and downloaded its contents onto a thumb drive. He also had cameras installed inside their home which he could view remotely.

40.    IAN DIAZ kept at least four firearms in their home and was often armed,

which intimidated MS. HADLEY.

41.     Most disorienting, IAN DIAZ even controlled MS. HADLEY's sleep, waking her up in the middle of the night on a nightly basis to attend to his needs or to watch something on TV with him.

42.     MS. HADLEY's job performance began to suffer as a result of the abuse from IAN DIAZ. She was tired, constantly sick, and could not keep up. IAN DIAZ frequently dropped in unannounced at her office dressed in his U.S. Marshal uniform. When he wasn't with her, IAN DIAZ was constantly texting MS. HADLEY. He urged MS. HADLEY to quit her job and work at Disneyland instead. She finally acquiesced to these demands, taking a substantial pay cut.

43.     IAN DIAZ's control and domination of MS. HADLEY extended into their sex life. From the beginning of the relationship, IAN DIAZ badgered MS. HADLEY to indulge his cuckold fantasy. Several times a day he would send her pornography, pictures of his genitalia, and texts begging her to have sex with another man. When she travelled for work, he texted her incessantly, pleading with her to have sex with a stranger at the hotel and record it. MS. HADLEY had zero interest in indulging IAN DIAZ's fantasy and grew increasingly upset by his constant badgering. Finally, she made an unequivocal demand that he stop pressuring her to have sex with a stranger or else she would break up with him.

44.     On February 14, 2014—Valentine's Day—MS. HADLEY was suffering from a debilitating cold and fever which, along with over-the-counter cold medicine (Nyquil), rendered her too weak to resist IAN DIAZ's demands that she indulge his cuckold fantasy. IAN DIAZ arranged for a stranger from Craigslist to come over. IAN DIAZ dressed MS. HADLEY, gave her three shots of cinnamon-flavored whiskey, and set up three cameras

in the bedroom. He watched remotely from the bathroom as the stranger entered the apartment, had sex with MS. HADLEY, and left.

45.     MS. HADLEY was traumatized by the Valentine's Day 2014 incident. She screamed at IAN DIAZ that she never wanted to do it again and made him promise to destroy the videos. IAN DIAZ said he had destroyed the footage, but then later admitted had not done so. He would frequently taunt MS. HADLEY about the video and use it as a source of control. Police would later find intimate images of MS. HADLEY on IAN DIAZ's phone over a year after their break-up. He resumed his efforts to pressure MS. HADLEY into having sex with strangers, but she was steadfast in her refusal.

46.     In August 2014, MS. HADLEY enrolled in the MBA program at Chapman University. She attended class two nights a week. In response to MS. HADLEY's efforts to seek independence, IAN DIAZ became even more controlling. He insisted on attending events with her. When she made plans to get breakfast with three new friends from school, he demanded that he come too and then sulked silently the whole time. IAN DIAZ would manufacture arguments on the nights she had school; the only way MS. HADLEY could appease him was to cut class and join him at Disneyland. Any time she drove outside the narrow triangle of home, school, and work, IAN DIAZ would immediately call her, as if he was tracking her vehicle.

47.     Over the next months, MS. HADLEY confided to IAN DIAZ that she was very upset over the Valentine's Day incident. She said it felt like a rape to her. IAN DIAZ grew very angry at this characterization.

48.     On or about June 5, 2015, IAN DIAZ and MS. HADLEY took title to a 2-bedroom condominium in a new development located at 514 South Anaheim Blvd., #2 in

Anaheim, California (the "Property") as joint tenants. They had contracted to purchase it months prior.

49.     IAN DIAZ was excited about the Property because it was near Disneyland.

50.     MS. HADLEY paid the down payment of $14,401.20 and the two obtained a mortgage in the amount of $459,745.00.

51.     After IAN DIAZ and MICHELLE HADLEY moved into their new home, IAN DIAZ became even more abusive and controlling. Often, IAN DIAZ would corner MS. HADLEY, subjecting her to angry tirades and rants for hours on end. During an argument in the car one night, IAN DIAZ brought the car to a complete stop in the middle of a busy California freeway and told her to get out. She almost did.

52.     IAN DIAZ's ongoing demands for MS. HADLEY to have sex with strangers triggered severe emotional distress—later diagnosed as PTSD—from the Valentine's Day incident. It was traumatizing for MS. HADLEY. The one time they went to a therapist together, IAN DIAZ was furious at her for talking about it and drove hazardously after the session, screaming at her for hours on end.

53.     She knew she needed to leave but was scared. Finally, in August 2015, MS. HADLEY packed up her car and left IAN DIAZ. Almost immediately, IAN DIAZ began engaging in a new type of abuse. IAN DIAZ destroyed much of the personal property that didn't fit in MS. HADLEY'S car. He canceled MS. HADLEY's car insurance and did not inform her until making a veiled threat to have her pulled over. IAN DIAZ interfered with MS. HADLEY's work by sending her books and texting her that he had people at Disney "checking up" on her job performance. When she reported to security at Disneyland that she was worried, the Disneyland security officers—some of whom were former colleagues of

IAN DIAZ's when he used to work there—seemed to already know about IAN DIAZ's behavior.

54. MS. HADLEY moved into a tiny apartment near Chapman University, quit her job at Disneyland, and found a new job doing marketing for a lending company. She bought all new furniture and became deeply engrossed in work and school. It was time to rebuild her life and return to her old self, the feminist overachiever she was before she met IAN DIAZ. She was nervous about IAN DIAZ retaliating, though—she reported to a campus therapist that she was scared of IAN DIAZ and did not want him allowed on campus.

55. IAN DIAZ continued to live in the Property, which became a point of contention with MS. HADLEY. They exchanged heated emails in September, spent one final night together in October, and then did not see one another again.

56. On November 24, 2015, IAN DIAZ and MS. HADLEY entered into an arm's length Settlement and Mutual Release Agreement (the "Property Agreement") in which IAN DIAZ was required to pay MS. HADLEY $3,000.00 in exchange for a quitclaim deed for the Property and his assumption of the mortgage loan for the Property on or before June 5, 2016.

57. On May 22, 2016, with the mortgage assumption deadline quickly approaching and IAN DIAZ having taken no steps to assume the mortgage, MS. HADLEY sent IAN DIAZ an email stating her intention to enforce the Property Agreement.

58. Even after the break-up, engaging with IAN DIAZ in any capacity was terrifying for MS. HADLEY and caused her great distress. Following the break-up, she was diagnosed by a psychiatrist in Orange, California with PTSD.

59. After sending the May 22 email, MS. HADLEY had a breakdown, got in

her car and wound up in Arizona. She was taken by ambulance to Dwight Regional Medical Center on the night of May 23. Medical staff asked MS. HADLEY questions to determine the source of what they diagnosed as a trauma-induced episode. A member of the medical staff said they were concerned about MS. HADLEY's safety and, on information and belief, made a report about IAN DIAZ to the APD.

60.     MS. HADLEY then began receiving suspicious and strange electronic communication, On May 24, 2016, MS. HADLEY began receiving LinkedIn messages and emails from an account, jayray711@gmail.com, with an unknown owner, urging her to warn ANGELA DIAZ about Ian. (*e.g.* on May 24, 2016 "I KNOW WHO IAN DIAZ IS, HIS WIFE, ANGELA – YOU NEED TO TELL HER WHO HE REALLY IS AND SAVE HER FROM A LIFE THAT YOU WENT THROUGH" and on May 25, 2016, "*You need to contact Angela- Ian is getting away with more abuse and if proven in court, could end him.*"). The first email was signed by a person purporting to be Jason Rayburn. MS. HADLEY had only recently learned that IAN DIAZ had gotten married and his wife was named Angela. MS. HADLEY immediately recognized these emails as a hoax and did not respond. MS. HADLEY would later learn that IAN DIAZ's wife, ANGELA DIAZ née Connell, had an ex-boyfriend named Jason Rayburn.

61.     On May 25, 2016, MS. HADLEY received a notification from Google that her email was the assigned forwarding address for the account jayray7111@gmail.com. The next day, MS. HADLEY responded to this email account by asking, "Who are you?" She received an auto-reply stating the account had been shut down. She also received an email from Google alerting her that the email account purportedly belonging to her, firstandonly1113@gmail.com, had been shut down. MS. HADLEY did not recognize that

email address as one she had ever created or used.

62.    MS. HADLEY was bewildered and confused. She feared IAN DIAZ was plotting something. Knowing IAN DIAZ's personality and believing he was panicking about the Property Agreement, she and her parents felt it was dangerous for MS. HADLEY to continue living alone in Irvine. So, she took the extreme measure of moving home with her parents in Ontario, California. In traffic, the commute was an hour and a half to school and her job. MS. HADLEY resigned from her prestigious job, gave up her lease, dropped out of school, and sold all her furniture which she'd worked so hard to acquire after she started over from breaking up with IAN DIAZ. All because she felt IAN DIAZ posed a threat to her safety. And she was right.

63.    On June 1, 2016, MS. HADLEY received an email at her regular Gmail account (michelleshadley@gmail.com) from Angiconnell@icloud.com with subject "WARNING OF TRO" stating "Michelle Suzanne Hadley: This is your electronic notification of a restraining order hearing against you and it is being filed by Angela Maria Diaz." It was copied (cc'ed) to a number of email addresses, including some she had received email from and others appearing to impersonate her: jayray7111@gmail.com, firstandonly1113@gmail.com, michellehadleydiaz13@gmail.com, mrsdiazforever@outlook.com, mshadley214@hotmail.com, msuzanne214@hotmail.com, preternatural13@icloud.com (an actual account of MS. HADLEY's), and murbach@urbachlawoffices.com (IAN DIAZ's real estate attorney)).

64.    On June 3, 2016, MS. HADLEY learned that IAN DIAZ's application to assume the mortgage on the Property was denied.

65.    On June 6, 2016, MS. HADLEY was at her parents' home when she heard

knocking at her door. When she came out, she saw police surrounding the house while a friend of IAN DIAZ's, Lesley Carlson, handed her a Temporary Restraining Order ("TRO"). The TRO ordered her to stay away from ANGELA DIAZ. No evidence or allegations were attached to the TRO. MS. HADLEY was confused and worried.

66.     Later that day, MS. HADLEY received an email from another new email address, this one purporting to be from IAN DIAZ – ianrdiaz@outlook.com. It urged MS. HADLEY to come to the Property. MS. HADLEY recognized it for the trap it was and did not respond.

67.     That evening, MS. HADLEY received a voicemail from Defendant Detective WILLIAM SEGLETES. She called him back immediately. He asked her about several email addresses which MS. HADLEY said were not hers. MS. HADLEY took the opportunity to inform SEGLETES that she feared she was being framed because *she* had received suspicious emails, as well as a baseless restraining order, from IAN DIAZ and ANGELA DIAZ. She asked SEGLETES to please get the IP addresses for any of the suspicious accounts involved. SEGLETES said a different detective would be assigned to investigate.

68.     MS. HADLEY was becoming increasingly worried about what IAN DIAZ had in store for her. She had no idea what actions she was being accused of. Her father reached out to MS. HADLEY's real estate attorney to see if she could get insight from IAN DIAZ's real estate lawyer, Matthew Urbach, Esq. Mr. Urbach responded with a PDF, but the file was corrupted.

69.     Starting on June 7, 2016, MS. HADLEY repeatedly called the APD to find out which detective was assigned to her case. One administrator said Defendant Detective

19

MICHAEL LEE was assigned to her case. Over the next week, MS. HADLEY left three detailed voicemails for LEE. She said she was worried the situation would escalate and that IAN DIAZ and/or ANGELA DIAZ might try to make it look like she was violating the TRO.

70.     On June 15, 2016, MS. HADLEY sent two emails to Microsoft (abuse@outlook.com) to report six email addresses she believed were fraudulently linked to her Gmail account by IAN DIAZ.

71.     Unrelatedly, that same day MS. HADLEY received two Microsoft Security Code emails attempting to tie her legitimate Gmail account to the fraudulent ones created by IAN DIAZ.

72.     On or about June 15, 2016, MS. HADLEY recalls she attempted to report her concerns about being framed to the Ontario Police Department, but the officer she spoke to on the phone instructed her to instead file an IC3 form with the Federal Bureau of Investigation (FBI).

73.     Later that afternoon, MS. HADLEY filed a Complaint Referral Form (IC3) with the FBI. She wrote "While I don't know exactly who is doing it, I have a reason to believe that my ex-fiancé, IAN DIAZ, also a deputy US Marshal is using gmail.com, outlook.com, and Hotmail.com to impersonate me online and send threatening emails to his current wife to scare me into letting him keep the property we co-own. I would like IP Address research conducted to identify where the emails are coming from and, if possible, who is creating them: mshadley214@hotmail.com, mshadley214@hotmails.com, mrsdiazforever@outlook.com, lilithistruth@outlook.com, ianrdiaz@outlook.com, michellehadleydiaz13@gmail.com, firstandonly1113@gmail.com." She did not receive a response from the FBI other than the automatic receipt emailed to her.

74.     Also, on June 15, 2016, MS. HADLEY sent an email to Christy Parker at the Department of Justice (DOJ). On information and belief, Ms. Parker had a human resources function at the DOJ, of which the U.S. Marshal's office is a part. MS. HADLEY informed Ms. Parker her of the problem and filed a formal complaint against IAN DIAZ. The email ended with "IAN DIAZ does not respect the boundaries of the law so I am extremely scared for my safety and obviously also afraid of being framed for a crime I did not commit simply because I was the victim of someone in law enforcement who understands the system better than I do."

75.     On June 16, 2016, MS. HADLEY sent a follow up email to Ms. Parker. It included the line "I cannot repeat enough how urgent and serious this matter is." MS. HADLEY copied both her parents in the emails to Ms. Parker. Ms. Parker confirmed receipt that afternoon by email stating "thank you."

76.     MS. HADLEY also emailed her friend, Jason Holfsness, telling him she had filed a complaint with the DOJ and forwarded the Christy Parker email to him. He responded the next day asking if she had heard back from the DOJ.

77.     On June 16, 2016 MS. HADLEY called Detective LEE again and left him a five-minute voicemail describing the Microsoft Security Account codes.

78.     On June 17, 2016, the return date for the TRO proceeding ANGELA DIAZ brought against MS. HADLEY, MS. HADLEY met ANGELA DIAZ face-to-face for the first time. ANGELA and IAN DIAZ brought a crowd of friends and family members who heckled MS. HADLEY while she waited. At one point, ANGELA DIAZ marched up to MS. HADLEY and thrust a stack of papers at her and said "here." This was the first and only time MS. HADLEY spoke with ANGELA DIAZ in person. The stack of papers contained print-

outs of the harassing emails, marking the first time MS. HADLEY had seen the evidence against her to support ANGELA DIAZ'S claims of harassment and threats. The emails, all falsely attributed to MS. HADLEY, were alarming, threatening, and violent; MS. HADLEY did not write or send them.

79.     On June 17, 2016, MS. HADLEY sent a follow up email to Microsoft stating, "This is a somewhat urgent situation. Can you provide me an update on how you can assist. Thank you! Michelle."

80.     On June 21, 2016, MS. HADLEY received another account security email from Microsoft. She emailed Microsoft, copying Ms. Parker.

81.     Later that day, MS. HADLEY received an email at her regular Gmail account from Craigslist to verify an ad titled "gang rape fantasy." Now it seemed somebody was trying to falsely attribute Craigslist ads to her. She emailed abuse@craigslist.org to inform them that somebody was using her personal email to post alarming ads.

82.     On June 24, 2016, at 11:45pm, MS. HADLEY was returning home to her parents' house after a date when she saw a suspicious unmarked car drive past. At first, she was scared and thought it was IAN DIAZ. Her fear grew when three men in plain clothes exited the vehicle, but then to her relief, they identified themselves as APD officers. Upon information and belief, they were Defendants LEE, CUNHA, and PEWSEY. Though the time of night was odd for them to be following up on her reports about IAN DIAZ, MS. HADLEY was initially thankful they were there. Detective CUNHA asked to see her electronic devices. MS. HADLEY retrieved her laptop computer and iPad from the car, entered the passcodes to open her devices and eagerly began to show Detective CUNHA the spoofed emails. Detective CUNHA said that somebody had shown up at 514 S. Anaheim

Blvd. to have sex with ANGELA DIAZ. "She was badly hurt," Detective CUNHA told MS. HADLEY. MS. HADLEY, genuinely worried, replied "Oh my god. Is she okay? Was she hurt?" Detective CUNHA focused in on the emails from the ianrdiaz@gmail.com and the Craigslist verification email. When it occurred to MS. HADLEY that she was being treated as a suspect rather than a victim, she explained that she had no idea what the Craigslist ad related to and that she had received—not sent—the emails from ianrdiaz@gmail.com. She told the officers that she was the crime victim, not the perpetrator. She explained that she could prove it by showing them the IC3 report, the emails she had sent to Microsoft, and other prophylactic measures she had taken to protect herself. MS. HADLEY advised the group that she had left three voicemails for Detective LEE over the last week. "Oh yeah," Detective CUNHA asked, "what was his number?" MS. HADLEY correctly stated Detective LEE's extension. In response, Detective LEE assumed a sheepish expression and said, "well, looks like I'm in trouble again tonight."

83.     Though the officers had only a search warrant, Detective CUNHA stated they had probable cause for an arrest because the ianrdiaz@gmail.com emails were stored on MS. HADLEY's phone. The officers confiscated her phone, laptop, and iPad. The officers handcuffed MS. HADLEY and placed her under arrest. She begged the officers to wake up her parents because she knew they would be scared if they woke up the next morning and saw her car but could not find her. Reluctantly, one of the officers woke up MS. HADLEY's parents while MS. HADLEY was led into the police car. In the car with Detectives CUNHA and LEE, MS. HADLEY again tried to explain the difference between being the sender of an email and being a recipient of it, and tried to explain that she had received—not sent—the emails from ianrdiaz@outlook.com. In the police car, she explained that she believed that

Ian was trying to frame her for the very crime he had committed against her (*i.e.* tricking and coercing her into fulfilling an Internet stranger's rape fantasy). "Oh yeah," Detective CUNHA said, "how come you didn't report it then?" MS. HADLEY muttered, "because he is a cop and I was scared."

84.     It wasn't until hours later, when police brought her into an interview room, that MS. HADLEY was read her Miranda Rights. MS. HADLEY was charged with five felonies and a misdemeanor: 1) Penal Code 166(C)(1), Contempt of Court for violating an Order of Protection; 2) Penal Code 220(B), Assault with Intent to Rape in Commission of a Burglary; 3) Penal Code 261(A)(2), Rape by Force/Fear; 4) Penal Code 422, Criminal threats with intent to terrorize; 5) Penal Code 646.9(A), Stalking; and, 6) Penal Code 646.9(B), Stalking with a TRO.

85.     Bail was set at $100,000.00.

86.     MS. HADLEY's parents, the owners of a small business manufacturing hubs for bikes, scrambled to bond their daughter out of jail. MS. HADLEY was released the next morning at 10:30am, on June 25, 2016. She waited outside the precinct for about 45 minutes for her parents to pick her up. She was terrified because the precinct was only a few minutes from the home of IAN DIAZ and ANGELA DIAZ. Her parents picked her up, but her three devices stayed in police custody, where on information and belief they remain to this day. MS. HADLEY had no back-up devices.

87.     For the next few weeks, MS. HADLEY rarely left her parents' house except to go with her parents to the family business. She was never alone. Without her devices, she was completely offline. She could not log into her Gmail account because its two-factor authentication required access to her now-confiscated phone.

88.     On July 6, 2016, MS. HADLEY noticed a vehicle resembling IAN DIAZ'S black Volkswagen Touareg following her and her parents. She reported the suspicious activity to the Claremont Police Department. Lieutenant Jason Walters followed up by email. MS. HADLEY provided personally identifying details about IAN DIAZ and expressed concern she was in danger. Lt. Walters alerted the other patrollers.

89.     By July 14, 2016, MS. HADLEY had still not been arraigned. In the middle of that day, MS. HADLEY was working at her parents' shop when she saw APD vehicles drive by. Her father joked that they were there to arrest her. Unfortunately, his joke contained more than a kernel of truth.

90.     The APD vehicles turned around and pulled up to the shop. Detectives CUNHA, SEGLETES, PEWSEY, and Lomeli came inside the shop. In front of both her parents, Detective CUNHA stated that he had electronic evidence that emails were being sent from MS. HADLEY's Gmail account and that she was under arrest for attempted rape. Mr. Hadley said that was impossible because his daughter couldn't even access her Gmail account without her phone, which was still in police custody. The Hadleys were told that officers had a warrant for MS. HADLEY's arrest. MS. HADLEY was read her Miranda Rights, handcuffed, and led to a police car. She was taken to the Anaheim Police Department overnight before being transferred to Orange County Central Women's Jail. Bail was set at $1 million, which MS. HADLEY and her parents could not afford.

91.     The felony complaint charged MS. HADLEY with the following crimes: 1) Penal Code 646.9(b) stalking with restraining order; 2) Penal Code 646.9(a) stalking; 3) Penal Code 422(a) Criminal Threats; 4) Penal Code 664(a)-261(a)(2) Attempt-forcible rape; 5) Penal Code 664(a)-261(a)(2) Attempt-forcible rape; 6) Penal code 220(b) Penal Code

220(b) Assault with intent to commit sexual offense during commission of first degree burglary; 7) Penal Code 664(a)-261(a)(2) Attempt-forcible rape; 8) Penal Code 664(a)-261(a)(2) Attempt-forcible rape; 9) Penal Code 664(a)-261(a)(2) Attempt-forcible rape; 10) Penal Code 166(c)(1) Violation of a protective order; and, 11) Penal Code 664(a)-261(a)(2) Attempt-forcible rape. MS. HADLEY also faced enhancements because several of the counts "occurred" while she was already released on bail.

92.     MS. HADLEY faced a possible sentence of life in prison.

93.     Over the next 2 ½ months, MS. HADLEY experienced the indignities of incarceration. She underwent body cavity searches and was deprived of medical necessities such as contact lens solution, leaving her nearly blind. When she first arrived at jail and started menstruating, her requests for feminine hygiene products—or even toilet paper—were ignored. She was mocked by a deputy in front of other inmates a few nights later when she exchanged her bloody underwear for clean ones. The deputy told her she was "disgusting."

94.     Because she was accused of sex crimes, MS. HADLEY was assigned to the jail's high security unit and labeled an R3 aka "Romeo." Many R3 inmates were accused of child molestation, child sex abuse, and other sex crimes. Other R3 inmates were women in protective custody, who were often known to be the most dangerous inmates. Several inmates had seen articles about MS. HADLEY in the Orange County Register and harassed her for supposedly masterminding such a wicked scheme. MS. HADLEY also inexplicably developed a reputation for being an informant. She was not one, yet other inmates would slam her cell wall and call her a snitch. When she was escorted through the dayroom, `they would say "oh, there's the snitch."

26

95.     MS. HADLEY was unable to eat or sleep while in jail. She spent hours on end pacing her tiny cell. As a "Romeo," she was allowed out of her cell for only one hour a day, plus one hour for weekend visitors. As a new inmate who had already been labeled a sex criminal and a snitch by other inmates, MS. HADLEY was subjected to constant mistreatment and abuse during this one hour of "free time." She was the last to take a shower, the last to use the phones, and was stuck with the least desirable chores, like cleaning the toilets.

96.     MS. HADLEY also became a minor celebrity among men serving time in the neighboring men's jail. Her jail cell number was disseminated—likely from a guard leaking it—causing MS. HADLEY to receive vast amounts of harassing, threatening, and sexually graphic messages in her inmate mail.

97.     Menstruation was a problem for MS. HADLEY in jail. Inmates were given three pairs of underwear per week and two maxi-pads per day of menstruation. MS. HADLEY suffers from dysmenorrhea, painful and heavy periods, treated best by birth control. When a doctor finally prescribed birth control to her, a deputy taunted her, "why do you need the birth control here? Are you worried somebody's going to *do* something to you here?"

98.     One guard seemed to have particular disdain for MS. HADLEY; this guard would pick on her and then announce that it was time to "toss the cells." The guards would require everybody to leave their cells, go into a center area called "the bubble" where the male guards could watch them remotely. MS. HADLEY was then required to stand with her pants down and her shirt over her head covering her face while guards ransacked the cells looking for contraband.

99.     Even in jail, IAN DIAZ continued to use the legal system against MS. HADLEY. On July 19, 2016, MS. HADLEY was served in jail with a TRO protecting IAN DIAZ from MS. HADLEY.

100.    MS. HADLEY felt hopeless. She had no idea how long she would be in jail and feared the truth would never come out.

101.    On October 6, 2016, the deputy prosecutor assigned to her case, Rick Zimmer, came to MS. HADLEY's cell. He opened the door, shook her hand, and said, "I'm very sorry."

102.    MS. HADLEY was free to go. Almost. Mr. Zimmer said she could go on one condition—that she participate in a "sting." For the next three days, MS. HADLEY was sequestered in a hotel room under police supervision. She had no idea why.

103.    On October 10, MS. HADLEY was released home on her own recognizance and forced to wear an ankle bracelet. She still faced life in prison for the crimes she had been charged with.

104.    On January 6, 2017 ANGELA DIAZ was charged with a number of crimes. Three days later, on January 9, 2017, MS. HADLEY was exonerated of all the crimes she had been charged with.

105.    In total, MS. HADLEY spent 88 days in custody. Afterward, her life did not return to normal. She could not sleep; on the rare instances she slept, nightmares tormented her. Paranoia and anxiety overwhelmed her. A knock on the door would cause her to hyperventilate in fear that the police were there to re-arrest her. Even more distressing was the constant fear that IAN DIAZ, who MS. HADLEY knew was the real mastermind of the plot to ruin her, would hurt her. Sometimes she even thought she was being followed by

ANGELA DIAZ.

106.   On information and belief, after she was exonerated, Deputy District Attorney Zimmer instructed MS. HADLEY's criminal lawyer, Michael Guisti, Esq., not to let MS. HADLEY publicly discuss IAN DIAZ abusing or orchestrating her rape. Zimmer expressed fear to Mr. Guisti that it would undermine his case against ANGELA DIAZ.

107.   To cope, MS. HADLEY began drinking heavily. She returned to school, but could not focus. Reading for an extended period of time—much less absorbing the information—became an arduous challenge. She went from being a straight-A student to barely scraping by her final semester. Worse yet, she felt like an outsider and outcast. The news coverage—which mischaracterized the situation as a "love triangle gone bad"—caused MS. HADLEY's fellow students to treat her like a sideshow act.

108.   MS. HADLEY also faced financial ruin. MS. HADLEY's credit was destroyed from defaulting on bills and student loans while in jail. She could only rent from landlords who did not require paperwork or background checks. Her job prospects were dismal because prospective employers could Google her and none of them wanted "the drama."

109.   MS. HADLEY's Google results made her nightmare inescapable. She could not date, apply for a job or even get a roommate without being judged or gaining unwanted attention regarding her case. She may have been exonerated in court, but because of search engine results, she had yet to be exonerated in the eyes of the public. She could not hide.

### *Defendants Conspire Against Michelle*

110.   On September 4, 2015—shortly after the fight that drove MS. HADLEY out of the Property in August 2015—IAN DIAZ went to the APD and made the first of many

29

baseless police reports against MS. HADLEY. He claimed she had cheated on him, was sending annoying emails, and that he was banned from Chapman University.

111. On September 10, 2015, IAN DIAZ returned to the APD with additional "evidence": an email thread of him and MS. HADLEY measuredly negotiating the status of the Property. It remains unclear what law he felt she had broken. Upon information and belief, IAN DIAZ was in his federal marshal uniform when he interacted with the APD.

112. On or about September 10, 2015, IAN DIAZ petitioned for a temporary restraining order against MS. HADLEY but was denied the TRO. Upon information and belief, his goal was for the court to exclude MS. HADLEY from the Property.

113. IAN DIAZ tried to get back together with MS. HADLEY in October 2015. They saw each other one last time, but the relationship did not resume.

114. On or about January 2016, IAN DIAZ met ANGELA DIAZ neé Connell. They were married the following month because ANGELA DIAZ had become pregnant. ANGELA DIAZ promptly moved into the Property. Later, ANGELA DIAZ revealed that she was unsure whether IAN DIAZ was the unborn baby's father. IAN DIAZ insisted she get an abortion, which ANGELA DIAZ did on or about April, 2016.

115. Upon information and belief, IAN DIAZ was furious at ANGELA DIAZ and ANGELA DIAZ was desperate to redeem herself.

116. Upon information and belief, the dynamic of the relationship between IAN DIAZ and ANGELA DIAZ was one of distrust and deception. Like with MS. HADLEY, IAN DIAZ would access ANGELA DIAZ's devices and track her through an app installed on her phone.

117. IAN DIAZ brought his cuckold-rape fetish into his relationship with

ANGELA DIAZ. ANGELA DIAZ agreed to have sex with other men if it would please IAN DIAZ and IAN DIAZ solicited men off Craigslist.com for this purpose.[3] It seemed IAN DIAZ fetishized not just watching the cuckolding, but also accusing his significant other of cheating on him.

118.    Meanwhile, the June 5, 2016 deadline for IAN DIAZ to assume the mortgage on the Property loomed. Upon information and belief, IAN DIAZ became increasingly agitated. He knew he would not financially qualify to assume the mortgage on the Property and he blamed MS. HADLEY for this blow to his ego. Upon information and belief, ANGELA DIAZ was jealous of the attention and emotional resources her husband devoted to his dispute with MS. HADLEY over the Property.

119.    On May 24, 2016, the phony emails began. Upon information and belief, IAN DIAZ created the email account jayray7111@gmail.com and sent an email to MS. HADLEY purporting to be Angela's ex-boyfriend and urging her to warn ANGELA DIAZ about IAN DIAZ. The purpose was to trick MS. HADLEY into defaming IAN DIAZ, while also disturbing ANGELA DIAZ.

120.    Thirty minutes after sending the "jayray" email to MS. HADLEY, IAN DIAZ sent MS. HADLEY a second email, this time from his own account, responding to MS. HADLEY's refusal to grant him an extension of time to assume the mortgage on the Property.

---

[3] Detectives knew IAN DIAZ solicited sex via the Internet for his partners to have sex with: "Q: Now when you questioned Ian about it, did he tell you that he had solicited men for ANGELA DIAZ to have sex with, Correct?"
A: [Detective CUNHA]: He didn't tell me. I found email evidence and text messages to the same. . . "And what was the response on ANGELA DIAZ's phone to these propositions? She said she would do anything for him. And she said she was okay with it if he was okay with it." Testimony of Cunha in *People v Angela Diaz,* August 28, 2017 at 14.

121.     The next day, May 25, 2016, the jayray7111@gmail.com account turned its attention to ANGELA DIAZ and sent her five emails warning her about IAN DIAZ. Examples of these emails' contents are [sic] "HE WILL HURT YOU. JUST WAIT. IT COULD BE A TEXT FROM A GIRL, ANOTHER PICTURE ON HIS PHONE, more women, more deception, MORE LIES, HIDING THINGS OR NOT TELLING YOU"; and, "MICHELLE TOLD ME ABOUT HIM, THE TORTURE HE PUT HER THEOUGH IS REPEATINF ITSELF NOW WITH You. IAN IS A SNAKE, SATAN, AND IS A SINNER. . . HE DOES NOT RESPECT WANT OR ADORE YOU."

122.     For the next several days, a new email account would be created and send several emails to ANGELA DIAZ about IAN DIAZ being deceptive and not loving her. Then, after one day, each account would be abandoned.

123.     Upon information and belief, ANGELA DIAZ and/or IAN DIAZ were creating the emails to manufacture drama in the relationship or to frame MS. HADLEY.

124.     The email addresses ANGELA DIAZ received emails were from: jayray7111@gmail.com,[4]   firstandonly1113@gmail.com,   mshadley214@hotmail.com, msuzanne214@hotmail.com.

125.     On June 1, 2016, ANGELA DIAZ deleted her Hotmail account and took printouts of the emails to the Superior Court of California, County of Orange North Justice Center. There, she petitioned for a Civil Harassment Restraining Order protecting her from MS. HADLEY.

126.     On June 1, 2016, the email account lilithistruth@outlook.com was created. At this point, the pattern of daily created-and-abandoned email accounts which sent content

---

[4] Jason Rayburn is ANGELA DIAZ's ex-boyfriend.

about domestic issues ceased. Moving forward, spoofed email accounts would appear day-after-day and send extremely violent content to ANGELA DIAZ, such as specific threats of gangrape and mutilation, with graphic photos attached. These emails frequently referenced the Property.

127.   Almost all emails sent from lilithistruth@outlook.com were signed with some variation of MS. HADLEY's name (e.g. Michelle S. Hadley, MS Hadley, Michelle Suzanne Hadley, MSH, etc.). Upon information and belief, detectives involved in the case took this to literally mean the emails were sent by MS. HADLEY, despite the sender taking some precautions to protect anonymity (such as using a Virtual Private Network ("VPN")) and the trivial ease with which one can sign another person's name to an email.

128.   Upon information and belief, lilithistruth@outlook.com email was created by IAN DIAZ.

129.   At or around 9 pm on June 1, 2016, IAN DIAZ and ANGELA DIAZ went to the APD and reported MS. HADLEY for sending all the emails. (the "June 1 Police Report") The police report by M.C. Ortiz stated that ANGELA DIAZ reported, among other things, receiving LinkedIn messages from Michelle

> "accusing her of being a sinner for marrying a 'rapist' and that from May 26 to June 1, Michelle sent emails that "advised and warned V-Angela about marriage with W-Ian. . . The e-mails then, escalated by threatening to kill, kidnap, rape, and torture V-Angela. S-Michelle stated several times, 'watch your back tonight and this week' and 'I hope you are scared of death tomorrow.' V-Angela also received graphic photographs of women being kidnapped and raped. See attached scanned images for the photographs and emails. V-Angela believes S-Michelle made those threats against her in response to her relationship with W-Ian. According to W-Ian, he hasn't received any criminal threats from S-Michelle, but stated S-Michelle has previously accused him of being a rapist. . . V-Angelia [sp] desires prosecution."

130.   The "Related Person(s)" section of the June 1 Police Report identifies IAN

33

DIAZ as a US Marshal employed by the US Marshal Service.

131.    On June 2, 2016, IAN DIAZ and ANGELA DIAZ called the police to report a violation of the TRO because more emails had come in. The police report (a follow up from the June 1 Police Report) states that Officers Zappa, Eden, and Kisslan were dispatched to the Property. It notes the officers made contact with both IAN DIAZ and ANGELA DIAZ:

> "Today V/Angela received multiple emails from an email address they believe to be S/Michelle. See attachments for further details. The most concerning of the e-mails makes reference to jewelry (a pearl necklace) and clothes (high heels) V/Angela was wearing as she left work. V/Angela states she rarely wears that necklace or high heels. The e-mail was sent nine minutes after V/Angela left her place of business. V/Angela works at JMAC Lending[5]. . .I gave W/Ian my email address and asked them to forward me any relevant e0mails to add to their original report. . . I later had 6 of the emails sent to V/Angela entered into records as evidence."

132.    On June 3, 2016, police were again dispatched to the Property after ANGELA DIAZ received another email. The report by Officer Gulley states "the email states S/Hadley (the signed author) was raped by V/Diaz's husband and V/Diaz will be raped and barren. The email states S/Hadley must rid of V/Diaz's husband and V/Diaz. The email continues and calls for V/Diaz to 'wear those heels again' as if she were watching her and [what] she wears." This follow up report indicates that Officer Gulley and Officer Karg conducted a patrol check of the area and asked dispatch to check MS. HADLEY's address.

133.    Altogether the June 1, 2016 police report contained 17 forwarded emails with the following references to MS. HADLEY: 1) Nine emails from sender "Lilith Hadley" via email lilithistruth@outlook.com five of which were signed "Michelle Hadley" and "Michelle" and "Michelle (Ian's Ex-Fiance)" 2) eight emails from Michelle Suzanne at address msuzanne214@hotmail.com, one of which was signed "Michelle S.H." and another

---

[5] MS. HADLEY was employed at JMAC Lending.

"MSH."

134.     On Saturday June 4, 2016, officers were dispatched to the Property because ANGELA DIAZ reported receiving another email. The report by Officer K. McAlpine ("June 4 police report") stated

> "V-Diaz received an email via a social network telecommunication (Linked In) from S-HADLEY stating 'Today, I have finally succeeded in getting my Army aligned to take you down.' 'Ian wont know what is coming, neither will you.' . . .V-DIAZ showed me the email via her computer. A synopsis of the email addressed to V-DIAZ, and the signed author (S-Michelle Hadley) read: 'What safety can a sinner provide an angel? What comfort can be found in fornicating with a RAPIST? How much does he love you, how far will he go to protect you? How much will he do for you? The test begins today. I will watch you squirm in anguish and pain. The house, the life I once had – the rape I endured, all will be solved. Have a great morning, enjoy starbucks and watch your back. Michelle."

Like earlier police reports, the June 3 police report made note that IAN DIAZ was a US Marshal.

135.     By June 6, 2016, IAN DIAZ and ANGELA DIAZ were frustrated. They had been having trouble serving the TRO on MS. HADLEY. Until it was properly served, MS. HADLEY could not be arrested for violating the TRO. On that day, in his capacity as a U.S. Marshal, IAN DIAZ dispatched a police detail from the Ontario Police Department to accompany his friend, Lesley Carlson, in serving MS. HADLEY. He did not reveal it was for his own personal matter. MS. HADLEY was served at 12:30 pm at her parents' home.

136.     Now IAN DIAZ and ANGELA DIAZ assumed their police complaints would hold more weight, and that MS. HADLEY could be arrested for violating the TRO. Right away they called in a violation. Officer Salicos' June 6, 2016 report (the "June 6 Police Report") states that he and Officers M. Han and D. Avila responded to a violation of court order report:

"Victim/Diaz reported she had a restraining order against Suspect/Hadley and Hadley just messaged Diaz saying she was on her way to hurt Diaz and her family." "Diaz and her husband, Mentioned/Diaz, told us Hadley was served with the restraining order. . .Diaz showed me two emails which she believed came from Hadley since being served with the restraining order. The first email came at 1354 hrs on today's date from the email address lilithistruth@outlook.com. The following is an excerpt from that email: 'I HOPE YOU DIE. IN GOD'S NAME, YOU WILL BE STRUCK DOWN. BY CAR, BY BUS, RAPED BY IAN, HURT BY HIS CHEATING AND ADULTORUS [sp] WAYS. You will pay for what you have done. I have proof. I have the eyes of God above as witness. Enjoy Ian Raping you tonight after he's already promised me a Chance. He will Rape, abuse and hit you. He will cheat and leave you with nothing. LILITH IS CALLED BY THE SCREECH OF THE OWL: nightfall will come. YOU WILL NOT BE SAFE FROM HER. SHE WILL MAIM MEN AND TORTURE WOMEN, KILL THEIR CHILDREN AND LAY IN WAIT TO SEDUCE AND TAKE BACK HER CONTROL. Break free from the chains --- I will finally do this when you are gone. Michelle Hadley' The email also had graphic images of women with captions explaining they were strangled and raped. . . Diaz said she wanted Hadley arrested tonight because she did not feel safe and she was tired of feeling in fear for her safety. . . While at the station Diaz contacted dispatch again to advise she had received another email from Hadley. Diaz forwarded an email to me which she received from Hadley at 2204 hrs after we had left. The email mentioned she could see the police leaving and told Diaz to not call the police. The email ends with: 'You will pay for this. I hope to god you are ready for the pain I will show you. Michelle.'"

137.    Officer Salicos' June 6 Police Report continues, stating he returned to the property and conducted a patrol check. He then left a voicemail for MS. HADLEY who called him right back and said she'd been at her parents' home in Ontario all night. Officer Salicos made note that MS. HADLEY had not been to Anaheim recently or been sending emails to the DIAZES ("[MS. HADLEY] had not been in the CITY OF ANAHEIM since September 2015 before she and M/Diaz broke up. She only recalled sending one email to V/Diaz after receiving an email notification about a restraining order. Hadley said she asked, 'Who is this?' in the email and never received a reply. I asked Hadley if she ever used an email address with the name 'Lilith' and she said she had not.").

138.    Officer Salicos further noted in the June 6 Police Report that during the call, MS. HADLEY expressed her concern about being falsely accused: "Hadley said she believes M/Diaz or V/Diaz are conspiring against her and attempting to make it look like she is sending V/Diaz the emails."

139.    Officer Salicos noted his awareness that MS. HADLEY had received an email from somebody purporting to be IAN DIAZ:

> "Hadley said on today's date M/Diaz had emailed her about having second thoughts about his marriage and he wanted her to come to his condo in Anaheim to speak with her. Hadley felt it was a 'trap' and did not go. Later that day officers responded to her parent's residence and served her with a copy of the restraining order. . . I provided Hadley with the report number and she was willing to cooperate with getting to the bottom of who is sending the annoying/harassing emails."

140.    Attached to Salicos' June 6 Police Report were 12 emails from "Lilith Hadley" at lilithistruth@outlook.com. One was signed "Michelle Hadley," 3 were signed "Michelle" one was signed "Michelle Ian's First and Only Love" and 4 were signed "MSH." Several of the emails had threads attached also signed by a variation of Michelle's name. And of course, as in all the police reports, IAN DIAZ was mentioned as a witness who worked as a US Marshal.

141.    Over the next week and a half, MS. HADLEY called the APD four times. Each time, she was told Detective LEE was investigating the concerns about IAN DIAZ she had reported to Detective SEGLETES. left three lengthy messages for Detective LEE expressing her belief that IAN DIAZ was creating digital evidence to frame her.

142.    Starting on June 13, 2016, IAN DIAZ began responding to Casual Encounter ads on Craigslist. He also tried to post ads, using the email addresses he had created impersonating Michelle, as well as her regular Gmail address. Pretending to be a

woman, IAN DIAZ would correspond with the individual who posted the ad, say he was interested in fulfilling a fantasy of being raped, then provide a description and/or pictures of ANGELA DIAZ with the address of the Property. Detectives would later admit that ANGELA DIAZ's phone records showed IAN DIAZ coordinating these plans with ANGELA DIAZ.[6]

143.    On June 13, 2016 date, Detective Laura Lomeli responded to a 911 call from ANGELA DIAZ stating somebody was at her home knocking on her door and there to rape her. Detective Lomeli states that when she arrived, IAN DIAZ was outside with his gun drawn and told Detective Lomeli he had been in contact with somebody from Craigslist that he thought was going to come to rape his wife and he wanted to entrap this person. Although on the 911 call, ANGELA DIAZ said a stranger had come to the Property, IAN DIAZ gave the impression that somebody was on the way. Detective Lomeli went inside, where both ANGELA and IAN DIAZ opened their laptops and, in rapid-fire succession, showed her all the emails ANGELA DIAZ had purportedly been receiving. They also showed Detective Lomeli the Craigslist ad for the person purportedly coming. IAN DIAZ told Detective Lomeli he had been in direct communication via Craigslist's email with the individual who posted the Craigslist ad.

144.    IAN DIAZ insisted to Detective Lomeli that MS. HADLEY was

---

[6] Q: . . . [Ian] admitted to you at some point in the summer of 2016 that he was involved in trying to get a man over to the house at some point, correct?
[Detective Cunha] A: Can you be more specific, I'm sorry?
Q: Sure. IAN DIAZ admitted to you that he, in his words, was trying to set up the man around June or July of 2016?"
A: He never admitted – I just found that in the text message." Testimony of CUNHA in *People v Angela Diaz,* August 28, 2017 at 14-15.

responsible and needed to be arrested.[7]

145.    During Detective Lomeli's visit, ANGELA DIAZ mentioned to her that the stress from MS. HADLEY had caused a miscarriage in April, but good news -- she and IAN DIAZ had just found out the day before that ANGELA DIAZ was pregnant with twins.[8]

146.    That night Detective Lomeli contacted her colleague, Detective MICHAEL CUNHA. Detective Lomeli described the patrol call she made to ANGELA and IAN DIAZ and expressed the belief that Detective CUNHA should take over the investigation because of his expertise investigating computer crimes. From that moment on, Detective CUNHA became the lead investigator.

147.    From his first conversation with IAN and ANGELA DIAZ, Detective CUNHA was intent on establishing probable cause against MS. HADLEY. He ignored all evidence implicating IAN and ANGELA DIAZ in the unfolding crimes.

148.    Starting with the call from Detective Lomeli on the night of June 13, 2016,

---

[7] "Q: And IAN DIAZ, when he was there, what was his demeanor?
[Lomeli] A: He seemed concerned and upset.
Q: What did he say regarding the incident regarding the entire, I guess, universe of emails that were sent up to this point?
A: He said it was ongoing for a while and this was being set up by his ex-girlfriend, Michelle. That she [Angela] had called police multiple times and police had been out there multiple times, and he wanted to see when police were going to do something about it.
Q: On this date he actually asked you when Michelle Hadley would be in handcuffs; is that correct?
A: Yes." Testimony of Lomeli in *People v Angela Diaz,* August 30, 2017 at 596-7

[8] "Q: Did the defendant [ANGELA DIAZ] tell you what kind of effect this had been having on her?
[Lomeli] A: Yes. She said that the stress of the entire incident had [caused] a miscarriage.
Q: Did she say when that miscarriage was? . . .
A: April 2016.
Q: Did she talk to you about another pregnancy:?
A: Yes. She told me she had just found out the day prior that she was pregnant with twins." Testimony of Lomeli in *People v Angela Diaz,* August 24, 2017 at 597-8.

Detective CUNHA began creating a fraudulent paper trail to fabricate probable cause to arrest MS. HADLEY. In his note memorializing his call with Detective Lomeli ("Follow Up 3 to the June 6 Police Report"), Detective CUNHA conveniently omitted pertinent facts (*e.g.* that IAN DIAZ had been directly interacting via email with the individual who posted the Craigslist "rape fantasy" ad) and fabricates others (e.g. falsely claiming the individual from Craigslist actually visited the home, that there had been a direct face-to-face encounter, and that the individual gave IAN DIAZ a copy of the Craigslist ad in person).[9] The report by Detective CUNHA reads:

> "On June 14, 2016 I was contacted by Detective Lomeli in reference to a call for service (16-92816) that occurred on June 13, 2016 at 2030 hours. Detective Lomeli advised me of the following information. She responded to 514 S. Anaheim Boulevard #2 in reference to a male subject at the residence who was there to fulfill a "Rape Fantasy." The male subject advised the residents he had posted an advertisement on Craigslist.org requesting a female with a similar fantasy. He had received a response from a Craigslist user who gave him the address of 514 S. Anaheim Boulevard #2 in the CITY OF ANAHEIM. The residents told him they never answered an advertisement on Craigslist. The male subject gave them the Craigslist advertisement and the thread of emails he had received from the user. He then left the residence."

149.    Detective CUNHA had actual knowledge of the following suspicious things about IAN DIAZ right away[10]:

---

[9] "Q: So you never told Detective CUNHA that the male subject gave Ian and Angela the Craigslist advertisement and the threats he had received from the user? . . .
[Lomeli] A: He [Craigslist ad poster] did give it to him [Ian] via email, not in person. They had an exchange via email. I never said a piece of paper was handed to Ian and the guy that posted the ad never had in-person contact. They had an exchange via email and Ian asked the subject to send me [Ian] a copy of the ad and that was by email, not in person." Testimony of Lomeli in *People v Angela Diaz,* August 30, 2017 at 610.

[10] E.g. "Q: And during the conversation, wherever it took place, whether on the phone or in person, did IAN DIAZ tell you – what did he tell you happened?
[CUNHA] A: He informed me about the ad, about his suspicions, about MS. HADLEY being responsible. He also talked about MS. HADLEY and his relationship, the restraining order that was denied, including the condominium subject." Testimony of Cunha in *People v Angela Diaz,* August 28, 2017 at 18.

a.      IAN DIAZ was responding directly to the individuals posting the Craigslist sex ads;

b.      IAN DIAZ admitted to him the Craigslist visitor may have been coming because ANGELA DIAZ had answered the ad and was cheating on him.[11]

c.      IAN DIAZ was behaving erratically, with a gun drawn, and expressed his desire to frame an innocent person believing he had come to the Property for consensual sex;

d.      IAN DIAZ had a history of using the criminal law to retaliate against the individual he was accusing (e.g. baseless police reports filed on September 4, 2015 and September 10, 2015 against MS. HADLEY);

e.      IAN DIAZ had a history of using the courts to retaliate against the individual he was now accusing (*e.g.* on or about September 11 2015, he unsuccessfully petitioned for a restraining order against MS. HADLEY for the purposes of gaining an

---

[11] "Q: Ian told you that he had two reasons for wanting these men to come over. One was to set him up and the other was what, effectuate an arrest?"
A: That's correct.
Q: He also told you when you confronted him about the northoflightsend email that he actually believed the rick encounter may have been with the consent of Angela. He told you that, correct?
A: I don't recall if he said it was with her consent.
Q: He thought that she may have consented. He didn't know?
A: I don't specifically remember if he told me it was with her consent. He was – I'm trying to use – I think paranoid is a good word.
Q: Being paranoid about Angela potentially wanting to be with other people?
A: Yeah. He had his doubts and then came up with the conclusion that she wouldn't do that.
Q: Okay. But at the time that he wanted to trap Rick, Ian didn't know whether or not Angela consented or wanted him to come or not?
A: He wasn't 100% sure. He told me he wasn't 100% sure about it.
Q: So he indicated he was willing to effectuate the arrest of someone who may have been totally innocent?
A: Yes, ma'am." Testimony of Cunha in *People v Angela Diaz,* August 28, 2017 at 16-7.

advantage in their real estate dispute and excluding her from the property);

      f.     IAN DIAZ was in a dispute with MS. HADLEY over the Property;

      g.     IAN DIAZ had been accused of sexual violence by MS. HADLEY.

150. Detective CUNHA never followed up to contact the individual who supposedly placed the ad and may or may not have come to the Property on June 13.

151. To his credit, right away Detective CUNHA sent exigent warrants to Craigslist and Microsoft to investigate the ads and email addresses lilithistruth@outlook.com and ianrdiaz@outlook.com.

152. On June 17, 2016, ANGELA DIAZ appeared in court for the TRO. When she saw MS. HADLEY, she handed MS. HADLEY a stack of emails from the offending accounts. This was the first and only in-person encounter these two women would ever have. It also marked the first time anybody had shown MS. HADLEY the evidence against her.

153. On June 18, 2016, Detective CUNHA received the returns from his warrant to Craigslist. They showed that the communications with the individual who posted the Craigslist ad were coming from email account, northoflightsend@gmail.com. Detective CUNHA reached out to IAN DIAZ and asked him if he recognized that email account. IAN DIAZ replied that it was his own. Thus, Detective CUNHA at that moment learned that IAN DIAZ was the one arranging for the Craigslist stranger to come to his home. IAN DIAZ made a halfhearted explanation about how he had reached out to the person who posted the ad in order to conduct his own independent research and this must be why the warrant was returning to his email. But nobody could fall for this because the Craigslist address (a3214684af543108aaae9b6f664f64238@reply.craigslist.org), returning to northoflightsend@gmail.com was the same one he had insisted was being controlled by MS.

1   HADLEY. It was the very exchange he had forwarded to Detectives Lomeli and CUNHA

2   and that they had recorded into their police report.[12]

3       154.    On June 19 and June 20th, ANGELA DIAZ reported two more Craigslist

4   ads.

5       155.    On June 21, 2016, Detective CUNHA received the response to his exigent

6   warrant relating to ianrdiaz@outlook.com and lilithistruth@outlook.com from Microsoft. It

7   covered the period between June 1, 2016 through June 21, 2016. The response from

8   Microsoft showed that although some of the emails were sent using a VPN to mask the

9   senders' IP address, 21 of them were sent from the same static IP address: 23.120.40.170. A

10  result of this sort should have been gold to Detective CUNHA. There were many ways he

11  could have discovered that this IP address corresponded to one location: 514 S Anaheim

12  Boulevard, *i.e.* the Property. He could have timely submitted more warrants to determine this

13  IP corresponded to an AT&T Internet account for that particular address and accountholder,

14  IAN DIAZ. He could have asked all people involved in the matter—Michelle, Angela and

15  Ian—for the IP information for their home. He could easily have solved the crime and

16  determined that Michelle had nothing to do with these accounts. Instead, Detective CUNHA

17  did nothing.[13]

18

19  _____

20  [12] "On 6/18/2016 I received via email a response from Craigslist.org concerning the posting
    id 5631477928 and email a3214684af543108aaae9b6f664f64238. . . I saw the email
21  address was resolved to the email northoflightsend@gmail.com. The listed IP address for
    the email account was 2.09.85.213.46. I could see the IP did not change with the replies
22  indicating it was a static IP. I called Ian and asked him if he knew the email address and he
    told me the email address was his. He apologized and told me he had actually written the
23  poster of the advertisement after he had learned he was coming to his house thinking his
    wife was consenting to the contact. I booked the search warrant results into evidence at the
24  Anaheim Police Department." See June 6 Police Report, Follow Up 2.

25  [13] "Q: Did you ever ask in June of 2016 – Did you ask Ian or Angela for their IP address?
    [CUNHA] A: No, I did not ma'am. . .
26

27

28

156.     On June 24, 2016, ANGELA DIAZ reported that somebody who had come from Craigslist had attacked her in the garage at the Property, 514 S. Anaheim Blvd.[14] ANGELA DIAZ was crying and disheveled when police officers responded, with visible injuries on her face and a ripped shirt. Detective CUNHA spoke to IAN DIAZ on the phone, but oddly, IAN DIAZ did not report home after hearing his wife had been attacked. Upon information and belief, the attack never happened. The police report ("June 24 police report") noted there was security footage. The security cameras were viewed three days later, on June 27, 2016, and no activity was visible.[15]

157.     Detective CUNHA obtained a warrant to search MS. HADLEY's devices and at about 11:30 pm on June 24, 2016, he, along with Detectives PEWSEY, SEGLETES, and LEE confronted MS. HADLEY in the driveway of her parents' home. Detective

Q: And Michelle – you didn't obtain Michelle's IP address at any point; correct?
A: No, ma'am." Testimony of Cunha in *People v Angela Diaz,* August 29, 2017 at 444-5.

[14] Officer Ungureanu reports in the June 24 police report that "Upon arrival we made contact with V-Doe and asked her what occurred. V-Doe was crying and had her shirt disheveled. She stated her husband left for work at approximately 1500 hours. A few minutes later she took her dog outside her garage. . . V-Doe walked toward the remote to close the garage door. She felt a suspect grab her from behind. The suspect pushed her against the garage wall and held her by the back of her neck. The suspect said, 'Now you're going to finally get raped.' He att4empted to put his hand down the front of V-Doe's pants. He put another hand on the inside of her shirt touching her left breast. She began to resist him as he turned her around and placed his hand on her throat. V-Doe was able to look at him as she faced him. She described the suspect as a dark skinned male either black or Hispanic and approximately 6'02". He wore a dark hat, dark colored bandana covered his face, black knitted gloves, a long white sleeve shirt, blue jeans and working boots. V-Doe yelled for the suspect to get off of her. She told the suspect she was going to call the police. The suspect threw her to the ground and ran away. . . "

[15] "There was a camera located northeast of V-Doe's garage. Officer Melchior attempted to retrieve surveillance footage from a security camera located in the garage port area. He responded to Anaheim Substation (501 S. Claudina St.) to obtain access to the footage. He was told the camera #61 captures the footage near V-Doe's garage. To gain access he would need to speak with Robert Hernandez (714) 476-2541 or (714)392-1387. Hernandez was not available to access the footage at the time of this report." June 24 police report.

CUNHA's account, as described in Follow Up 2 to June 6 police report, is consistent with MS. HADLEY's account. He notes MS. HADLEY expressing concern she was being framed. ("Hadley told me she never sent any emails to Angela or created any fake email accounts. She believes Ian is creating the accounts and sending the messages himself. I asked her why she thought this and she told me because he was trying to get her to sign off on selling the condo they had bought together in Anaheim. . .") Detective CUNHA reported that MS. HADLEY's phone showed emails from ianrdiaz@outlook.com "professing his love for her and telling her he wanted to be with her and leave Angela. These messages match the same messages that were sent to Angela's email. I asked her about the messages and she told me she did not write the messages and they were sent to her by Ian, or at least someone using the email address ianrdiaz@outlook.com."

158.    Detective CUNHA, failing to understand that MS. HADLEY being a recipient of the emails from ianrdiaz@outlook.com made it less likely she was the sender of any harassing emails, nevertheless claimed the emails gave him probable cause to arrest MS. HADLEY. He wrote in the report, "Based on the emails I saw and the messages from ianrdiaz@outlook.com I told Hadley she was under arrest for attempt rape."

159.    MS. HADLEY's phone, iPad, and laptop were all seized by the APD.

160.    Well before MS. HADLEY had time to arrive home from jail on June 25, 2016, Detective CUNHA received a report from ANGELA DIAZ that at 11:28am, she had gotten another threatening email from lilithistruth@outlook.com. ANGELA DIAZ also said another Craigslist rape-fantasy ad had been responded to.

161.    On June 26, 2016, Detective CUNHA sent control emails to the lilithistruth@outlook.com from Angela's email address. The lilithistruth@outlook.com

email account responded via email that she/he could not be stopped and Angela would be "ended" tonight. Detective CUNHA noted in his report that MS. HADLEY's phone did not appear to be receiving any of the messages. He also found other exculpatory evidence on MS. HADLEY's phone: "I also looked the emails and saw when Microsoft contacted Hadley on 06/15/2016 concerning the lilithistruth using her email as a recovery email she responded to Microsoft saying the email account lilistruth was not hers. There are also numerous messages she had written to her friends telling them about the email account and how strange it was. She does make reference to Ian possibly using the emails to set her up."

162.    On June 28, 2016, Detective CUNHA processed MS. HADLEY's cell phone and iPad through the Universal Forensic Extraction Device and obtained two separate reports which were placed onto a compact disc and booked into evidence. At no point does it appear the results were examined.

163.    Over the next two weeks, ANGELA and/or IAN DIAZ notified the police no fewer than 12 times to report alleged email harassment and threats from MS. HADLEY toward ANGELA DIAZ. They would routinely forward the emails and/or Craigslist ads to police.

164.    Upon information and belief, no further resources were put into investigating the case. Nor were updated warrants served on Microsoft or Craigslist for the voluminous new evidence exonerating MS. HADLEY and implicating IAN and ANGELA DIAZ. Even though there were dozens of new emails and several Craigslist ads, no efforts were made to determine who had sent them. APD detectives simply decided MS. HADLEY was responsible even though all the evidence in the APD's possession was exculpatory. Later, Detective CUNHA would blame the companies for not timely responding to his

46

warrants. However, he never actually sent another warrant to Craigslist or Microsoft after June 21, 2016, despite these warrants' revelations that many of the emails in question were sent from a static IP address traceable to IAN and ANGELA DIAZ. It would not be until September 2016 that Detective CUNHA would even try to identify whom the known static IP address belonged to.

165.    Detective CUNHA failed to do the bare minimum to investigate the digital evidence in this case. He accepted all evidence by forwarded email, well-aware that anybody can doctor a forwarded email. He never sought headers from emails to show their chain of custody or where they originated from. Despite knowing that he could not trust forwarded digital evidence,[16] Detective CUNHA did so anyway.

166.    Detective CUNHA also ignored mistakes and sloppiness within the four corners of the emails IAN DIAZ and ANGELA DIAZ forwarded to him. For instance, on July 13, 2016, IAN DIAZ contacted Detective CUNHA and forwarded several emails he had received from the lilithistruth@outlook.com account, all of which were signed with MS. HADLEY's name or a variation of her name. One email, sent from lilithistruth@outlook.com to Ian's email account, irishcloud@me.com, contained an attachment purporting to be an email responding to a Craigslist rape fantasy ad. Whoever drafted it was very sloppy; it

---

[16] "Q: Let me ask you, did the defendant [ANGELA DIAZ] ever provide you with the electronic copies of these emails on her computer?
[CUNHA] A: No. Q: Did you try to get them?
A: There was a mention of them, sir. I talked to her and Ian that I was going to take them but we never did." "Since this was an electronic copy, this could have easily been copied and pasted at that point because everything was forward to me. It wasn't electronically done. That can be done with a copy, writing the email out. There are no headers to show who the actual transaction went through since I didn't have any electronic copy. At that point all I had was paper copies and this was forwarded, copy and pasted there, and then just continuing with the other messages." Testimony of Cunha in *People v Angela Diaz,* August 24, 2017 at 240.

should have been obvious at the time to Detective CUNHA it was doctored. For instance, the "From" line states that both michelleshadley@gmail.com and HadleyM@dickinson.edu sent the email simultaneously. Obviously, this is impossible—an email can only be sent from only one person. Additionally, the email was not addressed to a valid email address—there is no "@" in the address. This email says "Hi there, I am dying for this kind of fantasy to come true. Pull me down, choke and bruise me, have your way with me. Nothing you can do will hurt me. I am wet with the thought of you doing this to me. Let me know if today or tonight works for you? I love to host, live alone and am ready. All the other men I have been with have said I am a good little submissive. The Domain Condos 514 S Anaheim Blvd Unit 2 92805. 4 or 6PM? My window to the front room is Anaheim Blvd. I will be waiting…. Michelle." Another fraudulent email was allegedly from MichelleSHadley@gmail.com to a Craigslist user (this time with a plausible email address: f6nmmm-5666404581@per.craigslist.org); however, the sender had intended for it to appear from the male Craigslist poster instead of MS. HADLEY. This email stated, "You are gorgeous! I would love to shove a baseball bat in your pussy. I will bind you and hold you down until you scream for more. I will be there at 6 and I will watch you until I am ready."

167. Even Detective CUNHA admitted that he recognized these emails were doctored in the June 6 Police Report, Follow-Up 16, CUNHA writes —"It appears the subject is once against answering Craigslist.org advertisements and suppling [sic] Angela's address and photos." Detective CUNHA continued, "I looked at the one reply sent Wednesday, July 13, 2016 at 3:47PM and saw it was from email address michelleshadley@gmail.com. The email appears to attempt to seem like it is actually coming from the Craigslist.org poster of the advertisement but is coming from the michelleshadley@gmail.com." At the time,

Detective CUNHA had MS. HADLEY's devices and login information for her Gmail account; he had been accessing them. He had the ability to confirm that the emails in question were not sent from her account. Further, even if Detective CUNHA thought MS. HADLEY was doctoring emails to scare ANGELA DIAZ or IAN DIAZ, then he would have to concede that the Craigslist communications purportedly sending people to execute rape fantasies with ANGELA DIAZ were fabricated. Ultimately, Detective CUNHA received proof from Google that Michelle's Gmail account was not active after her first arrest, but when asked to testify, he was evasive about exactly when he learned this.[17]

168.    The most striking piece of common-sense evidence that law enforcement officers ignored is contained in almost every piece of correspondence at issue—almost every email was signed as Michelle, MSH, Michelle S Hadley or some other variation of MS. HADLEY's real name. One would be hard pressed to find a case of stalking where the offender takes the trouble to mask her identity by using fake email accounts and VPNs, but signs his or her own real name to threatening emails. Particularly, nobody with Michelle's intelligence, academic prospects and sterling record would mastermind such an

---

[17] Q: Were you able to confirm that michelleshadley@gmail.com had not been accessed basically since Michelle Hadley's arrest on June 24 of 2016 until around July 20 of 2016? [CUNHA] A: Yes.
Q: How did you do that?
A: I contacted Google.com.
Q: What did you get a response on?
A: I wrote a search warrant to google asking for login activity for michelleshadley@gmail.com during that time frame.
Q: Was there any?
A: I can give you the exact dates. .
Q: So from June 22 to July 17, 2016, Google has no log-in or account activity on that email address, correct?
A That's correct.
Q: And did that corroborate what MS. HADLEY told you when we interviewed her in October of 2016? A: Yes sir." Testimony of Cunha in *People v Angela Diaz,* August 24, 2017 at 236-7.

unequivocally illegal scheme, much less sign her name to it. The emails containing her name should have signaled to detectives they were sent from anybody but Michelle.

169.    On July 13, 2016, ANGELA DIAZ contacted Detective CUNHA to forward him more emails and Craigslist ad correspondences. One Craigslist correspondence purportedly between Lilith Hadley and another individual appeared to be very recent. They were signed "Michelle" and set up a date to "Netflix and Chill." Detective CUNHA responded to the scene and discovered that, for the first known time, an actual person had responded to the ad and physically shown up at the Property. This person, a 17-year-old boy, admitted he had posted an ad on Craigslist looking for somebody to "hook up" with. The correspondence submitted to evidence showed no plan to act out a rape fantasy against ANGELA DIAZ.

170.    On July 14, 2016, Deputy District Attorney Richard Zimmer signed an arrest warrant for MS. HADLEY's arrest and set bail at $1 million. MS. HADLEY was arrested that day. She was charged with ten felonies and a misdemeanor. She faced life in prison.

171.    Despite MS. HADLEY'S arrest, the next day, on July 15, 2016, IAN DIAZ petitioned the Superior Court of California County of Orange for yet another Temporary Restraining Order claiming "my home, wife & future unborn children have been threatened. Hadley has relentlessly emailed me personally for months attempting to execute a rape or death."

172.    On or about July 26, 2016, IAN DIAZ bought a new phone and did not migrate or backup any of the data from his old device.

173.    On or about September 10, 2016 IAN DIAZ learned ANGELA DIAZ had

lied about being pregnant with twins. He realized she had purchased the sonogram on Etsy.com and doctored the home pregnancy test. IAN DIAZ kicked ANGELA DIAZ out of the Property and she moved to Arizona, where her parents lived. On September 16, 2016, IAN DIAZ filed a petition to annul his marriage to ANGELA DIAZ.

174.    On September 30, 2016, IAN DIAZ scheduled an appointment with Detective CUNHA. During the meeting, IAN DIAZ confessed that MS. HADLEY was innocent all along of the "heinous activity" she had been accused of.[18] IAN DIAZ informed Detective CUNHA that he and ANGELA DIAZ broke up and he kicked her out of the Property. He said ANGELA DIAZ was under investigation for check fraud and told Detective CUNHA about the fake ultrasound and doctored pregnancy test. He also confessed that the original pregnancy did not end in a miscarriage from the stress of being stalked by MS. HADLEY, as he and ANGELA DIAZ had told APD officers, but rather that ANGELA DIAZ had an abortion because she was unable to determine the fetus's father. IAN DIAZ reported that he believed ANGELA DIAZ had framed MS. HADLEY all along. During this meeting, IAN DIAZ also confessed to extreme controlling behavior of both MS. HADLEY and ANGELA DIAZ, including going through MS. HADLEY'S text and computer files, downloading them onto a thumb drive, and tracking the miles that Angela drove her car.[19]

---

[18] "A [Cunha]: He then told me that Ms. Diaz had framed Ms. Hadley concerning these emails.
Q: Did he say he believed that?
A: He told me, based on all of her actions and the past and the fact he didn't believe Ms. Hadley was possibly responsible for this kind of heinous activity, that he believed it was possibly Ms. Diaz doing it and then he asked me what kind of evidence I had against Ms. Hadley." -- Testimony of Cunha in *People v Angela Diaz,* August 24, 2017 at 259
[19] Q: "And during the interview Ian admitted that he has exhibited controlling behavior over women in the past, correct?
[CUNHA] A: I don't know if it's the world controlling. I don't know if that was the exact words that he had used, something to that effect. I don't know if it's the exact words, ma'am.

175.    Despite the loads of evidence implicating both ANGELA and IAN DIAZ, only ANGELA DIAZ was seriously investigated. IAN DIAZ was never questioned again. Detectives put almost no effort toward getting warrants for the previously-neglected materials that corresponded to IAN DIAZ'S IP address (e.g. the ianrdiaz@outlook.com and lilithistruth@outlook.com email account logins from the periods June 22 to July 13, 2016). Detectives did not search the cell phone IAN DIAZ was using at the time, instead blindly accepting the excuse that he gave it to his mom.[20] IAN DIAZ interrupted detectives' search

---

Q: Okay. He admitted he used to go through Michelle Hadley's computer, correct?
A: Yes.
Q: He also told you he used to go through Michelle Hadley's text messages; is that right?
A: I don't recall if he told me text messages. I know there was a computer issue.
Q: And he said he would go through all of Michelle's computer files when they moved out and transferred some of them to a thumb drive?
A: That's correct.
Q: And did he indicate to you that Michelle had accused Ian of doing secret background checks on her?
A: Yes, ma'am.
Q: And also during the interview he acknowledged that he was tracking the number of miles that Angela drove her car?
A: That's correct." Testimony of Cunha in *People v Angela Diaz,* August 28, 2017 at 82-3.

[20] "Q: After September 2016 did you ever speak to Ian again?
[CUNHA] A: yes. I did.
Q: Where and when did that take place, the conversations?
A: I talked to him on the phone and also via text message.
Q: Can you please tell us when and what you talked about?
A: Yes. I asked him for his phone and that was on voice and also through text messaging I asked to recover his phone.
Q: When was that?
A: Approximately October. It's an approximate date. I could be off.
Q: What did he say?
A: Did he turn over anything?
A: No, he did not.
Q: Did he say anything in response to your request?
A: Yes.
Q: What did he say?
A: He told me his mother now had the phone and that she lived in Idaho.. .
Q: And did you ask him whether or not he could retrieve the phone from his mother?

52

of his new phone.[21] They did only a manual search of his laptop and did not run it through the UFED machine, thereby failing to detect any erased accounts and VPN use. They ignored the incriminating digital evidence they found on IAN DIAZ's devices relating to the crime (e.g. images of nude women, including MS. HADLEY; impersonations of LinkedIn accounts; and photos of dead children, rape scenes, and a verse from the book of Genesis used in emails purportedly sent by MS. HADLEY) and made up an excuse in court that these files were just attachments.[22]

176.    The APD did not verify IAN DIAZ's work records to match them to the confirmed times emails were sent from the Condo's IP address. Even after learning his boss, who signs off on timecards, only sees IAN DIAZ three or four times a week and does not

---

A: Yes, ma'am.
Q: What did he say?
A: He said that it was hers now." Testimony of Cunha in *People v Angela Diaz,* August 28, 2017 at 75-8.

[21] Q: While you were looking at his phone, at some point he came back to retrieve the phone; is that correct?
[CUNHA] A: Yes.
Q: That was before you were finished with it?
A: The physical look I could do. Then I ended up giving it to Investigator Bridges who tried to run a UFED on it but, as previously mentioned that wasn't updated, so he could not do a full report." Testimony of Cunha in *People v Angela Diaz,* August 28, 2017 at 23-24.

[22] "Q: on Ian's computer you were able to locate numerous photos of nude women, including Michelle Hadley and [redacted].. . And also you were able to recover several memes of emails about strangers having sex with someone else's wife or nude girlfriend?
[CUNHA] A: Yes.
Q: You were also able to recover pictures of dead children, rape scenes, and photo of a verse from the book of genesis belonging to IAN DIAZ?
A: Yes
Q: And you also found on his computer Craigslist ads from the rape fantasies who were answered by whoever it is?
A: Yes. But to note those were all forwarded pictures and emails, they were included as attachments to emails." Testimony of Cunha in *People v Angela Diaz,* August 28, 2017 at 90-91.

verify his time cards, APD detectives let him interrupt the search of his phone before it was over. When IAN DIAZ was subpoenaed for court, the process server was unlawfully intimidated and bullied by both state and federal employees.[23]

177.    Ultimately, ANGELA DIAZ was arrested January 6, 2017.

178.    MS. HADLEY was exonerated on January 9, 2017.

179.    The CITY OF ANAHEIM and Orange County District Attorney's Office immediately started mischaracterizing MS. HADLEY's ordeal to draw attention away from their own grave mistakes. In the January 9, 2017 press release announcing ANGELA DIAZ's arrest and MS. HADLEY's exoneration, they grossly overstated the complexity of the crime and the strength of the evidence they had implicating MS. HADLEY at the time of her arrests: "Due to the seriousness of the threats, the alleged attack on Diaz in her garage, the escalation in both the frequency and nature of the threats, and yet another man arriving at Diaz's residence to engage in a rape fantasy encounter, law enforcement believed a serious threat to public safety existed. Based on the fact that the available evidence pointed only to MS. HADLEY an arrest warrant was issued and charges were filed against her." (See Orange County District Attorney News Release, January 9, 2017, http://orangecountyda.org/civica/press/display.asp?layout=2&Entry=5055, last visited December 9, 2018.)

180.    The press release continues the cover-up of investigators' incompetence, falsely claiming that the use of VPNs prevented earlier discovery of MS. HADLEY's

---

[23] "Then they had the police come out and talk to me. The police officer asked me if I was the person there trying to serve. He told me he couldn't do anything about me being on the sidewalk but he told me I wasn't allowed back in the building and then had an agent do the same thing from the Department of Homeland Security." Testimony Michael Nyerges in *People v Angela Diaz,* August 30, 2017 at 665.

innocence when in fact the warrant returned 21 emails originating from the same static IP address that ultimately led to 514 S. Anaheim Blvd., the condo where ANGELA and IAN DIAZ lived. This information was in the hands of law enforcement before Michelle's first arrest. "APD investigators attempted to serve the emergency search warrants in order to determine the Internet Protocol (IP) addresses for the emails to find the location from which the emails were being sent, but the use of Virtual Private Networks (VPN's) and third-party proxy servers masked the IP addresses and originating locations of the messages."

181.    The most disturbing part of the press release is that it lauds the work of the APD and, in particular, the one APD employee most responsible for MS. HADLEY's wrongful arrests. "I want to give kudos to APD, in particular Detective Michael CUNHA, who worked tirelessly and devoted hundreds of hours to uncovering the truth. I would also like to thank OCDA's Investigative Bureau, and our prosecutors for continuing to investigate the case after Ms. Hadley was taken into custody on July 14 and spent approximately three months in jail. It took months of painstaking work to remove the disguise from some of the IP addresses and reveal the real source of these emails."

182.    The press release doubled down on IAN DIAZ's innocence: "The evidence we currently have does not show involvement by John Doe."

183.    In an interview to Dateline, the DA said, "This is one of the most well thought out well-executed plans."

184.    In a statement provided to Matt Lauer that aired on the February 24, 2017 episode of the Today Show, the APD issued a statement continuing to cover up its officers' mistakes and omissions: "We believe our actions were appropriate based on the evidence that was known to us at the time. In addition, it was the persistent efforts of the detective

who ultimately uncovered the truth that led to Michelle's exoneration." (https://www.nbcnews.com/dateline/diabolical-scheme-woman-jailed-craigslist-rape-fantasy-plot-against-ex-n724881, last visited December 10, 2018)

185.    In the media, the APD and DA would insist the impersonated emails were somehow stylistically similar to MS. HADLEY's writing style. At no point in MS. HADLEY's entire life had she ever sent correspondences that were threatening, harassing, violent, repetitive, cruel. She never created fake email accounts, nor sent anything violent and certainly not images of rapes, decapitated women, or mutilated children.

186.    A hearing in *The People of the State of California v Angela Maria Diaz* in Superior Court of the state of California, County of Orange commenced in August, 2017. Disturbingly, many of the same individuals who falsely arrested MS. HADLEY were involved in ANGELA DIAZ's case, including Detective CUNHA and ADA Zimmer as prosecutor.

187.    On October 17, 2017, ANGELA DIAZ pled guilty to 32 counts, including ten counts of felony charges—kidnapping, false imprisonment, perjury relating to the temporary restraining order, falsifying a check, cashing a false check, and 22 counts of false filing of police reports. She faced up to twelve years in state prison and an additional 11 years in county jail. She was sentenced to five years in prison.

188.    On information and belief, no charges related to this incident have been brought against IAN DIAZ.

189.    There is a Due Process right to be protected from procedures, information systems, or conduct that foreseeably leads to wrongful incarceration without specific protective procedures in place. The private interest that is affected—personal freedom—is a

substantial, vital liberty interest. Accordingly, when an agency has evidence with actual notice of a person's innocence but proceeds to arrest that person anyway, it not only demonstrates that its policies fail to adhere to the requirements of the Constitution, its failure exhibits deliberate indifference.

190.    At all material times and, alternatively, the actions and omissions of each Defendant were intentional, and/or wanton, and/or willful, and/or reckless, and/or callous, and/or malicious, and/or deliberately indifferent to MS. HADLEY's rights, and/or grossly negligent, and/or negligent.

191.    MS. HADLEY has incurred economic harms and losses, as well as ongoing stress and anxiety, as a result of Defendants' tortious, wrongful, and constitutionally violative conduct.

**FIRST CAUSE OF ACTION**
**EXCESSIVE AND UNREASONABLE USE OF FORCE**
**Under 42 U.S.C. § 1983**
**PLAINTIFF MICHELLE HADLEY AGAINST OFFICER DEFENDANTS and**
**DOES 1-10**

192.    MS. HADLEY re-alleges and herein incorporates by reference the allegations set forth in paragraphs 1-191 above.

193.    By the actions and omissions described above, the Defendants named above in this cause of action and DOES 1-10, acting under the color state law in their individual capacities, arrested MS. HADLEY without probable cause. This deprived MS. HADLEY of the right to be free from the use of unlawful and/or unreasonable force, since any force used to effect and maintain an unlawful arrest is unlawful, as secured by the Fourth and Fourteenth Amendments.

194.    The listed Defendants' failure to intervene, prevent or stop the

constitutional violations on the part of other individually named Defendants and/or DOE Defendants, and/or supervisors, who were in a position to do so when such violations occurred, renders such Defendants liable for these violations.

195.    Defendants PEWSEY, SEGLETES, LEE, and CUNHA and the to-be-identified DOE 1-10 APD employees' deliberately indifferent and constitutionally violative conduct set into motion the chain of events that proximately caused the subsequent wrongful seizures of MS. HADLEY, and her personal effects, caused the false imprisonment of MS. HADLEY, caused MS. HADLEY to be subjected to liberty deprivations, and caused MS. HADLEY to expend time and resources defending herself, securing bail, paying counsel, relocating, and experiencing the enormous stress of imprisonment with the threat of a life sentence for crimes she did not commit.

196.    The acts and omissions of Defendants PEWSEY, SEGLETES, LEE, CUNHAS and DOES 1 through 10, their deliberate indifference and other constitutionally violative conduct foreseeably set into motion the chain of events that proximately caused the wrongful seizures of MS. HADLEY on June 24, 2016 and July 14 to October 10, 2016 and caused MS. HADLEY and her family to expend resources on bail, attorneys, as well as considerable other harms and losses.

197.    To the extent the supervisors of Defendants PEWSEY, SEGLETES, LEE, CUNHA and DOES 1-10, who supervised them at material and relevant times, knew, should have known, or had reason to know of Defendants' constitutionally violative conduct, as alleged above, or their propensity to engage in such conduct, such supervisors failed to prevent the unconstitutional acts of said Defendants and failed to properly supervise, thus rendering them liable both directly and in their capacity as supervisor. Thus, any supervisors

that failed to prevent the unconstitutional acts of said Defendants and failed to properly supervise them are liable directly and in their capacity as a supervisor.

198.    The Defendants named in this cause of action subjected MS. HADLEY to their wrongful conduct, depriving MS. HADLEY of the rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of Plaintiff would be violated by their acts and/or omissions.

199.    In committing the acts alleged above, the individually named Defendants and DOE Defendants acted maliciously and/or were guilty of a wanton and reckless disregard for the rights, safety, and emotional well-being of MS. HADLEY, and by reason thereof, MS. HADLEY is entitled to punitive damages and penalties allowable under 42 U.S.C. § 1983 and other state and federal law against these individual Defendants.

### SECOND CAUSE OF ACTION
### UNREASONABLE SEIZURE OF PERSON
### Under 42 U.S.C. § 1983
### PLAINTIFF MICHELLE HADLEY AGAINST DEFENDANTS PEWSEY, SEGLETES, LEE, CUNHA, and DOES 1-10

200.    MS. HADLEY re-alleges and herein incorporates by reference the allegations set forth in paragraphs 1-199 above.

201.    As described above, Defendants PEWSEY, SEGLETES, LEE, CUNHAS and DOES 1 through 10, acting under color of law, proximately caused the wrongful seizure of MS. HADLEY without probable cause, in violation of her right to be free from such unlawful and unreasonable seizures under the Fourth Amendment to the United States Constitution.

202.    MS. HADLEY was subjected to a warrantless arrest on June 24, 2016 without probable cause, which is, *ipso facto*, a constitutionally violative unreasonable

seizure. MS. HADLEY's subsequent mistaken arrest and detention were caused by the failure of Defendants to take corrective action and willful blindness to her innocence.

203.    MS. HADLEY was subjected to arrest and detention on July 14, 2016 pursuant to a warrant that was issued without probable cause. This is a constitutionally violative, unreasonable seizure which continued for the entirety of MS. HADLEY's unlawful 88-day incarceration.

204.    MS. HADLEY was also deprived of her right not to be deprived of liberty without due process of law, as secured by the Fourteenth Amendment.

205.    These deprivations of MS. HADLEY's clearly-established constitutional rights caused severe damages and injuries as described above.

206.    To the extent the supervisors of Defendants PEWSEY, SEGLETES, LEE, CUNHA and DOES 1-10, who supervised them at material and relevant times, knew, should have known, or had reason to know of Defendants' constitutionally violative conduct, as alleged above, or their propensity to engage in such conduct, such supervisors failed to prevent the unconstitutional acts of said Defendants and failed to properly supervise, thus rendering them liable both directly and in their capacity as supervisor. Thus, any supervisors that failed to prevent the unconstitutional acts of said Defendants and failed to properly supervise them are liable directly and in their capacity as a supervisor.

207.    The Defendants named in this cause of action subjected MS. HADLEY to their wrongful conduct, depriving MS. HADLEY of her rights secured by the Fourth and Fourteenth Amendments, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of Plaintiff would be violated by their acts and/or omissions.

208.    In committing the acts alleged above, the individually named Defendants

and DOE Defendants acted maliciously and/or were guilty of a wanton and reckless disregard for the rights, safety, and emotional well-being of MS. HADLEY, and by reason thereof, MS. HADLEY is entitled to punitive damages and penalties allowable under 42 U.S.C. § 1983 and other state and federal law against these individual Defendants.

**THIRD CAUSE OF ACTION**
**UNREASONABLE SEIZURE OF PROPERTY**
**Under 42 U.S.C. § 1983**
**PLAINTIFF MICHELLE HADLEY AGAINST DEFENDANTS PEWSEY,**
**SEGLETES, LEE, CUNHA, and DOES 1-10**

209.    MS. HADLEY re-alleges and herein incorporates by reference the allegations set forth in paragraphs 1-208 above.

210.    As described above, Defendants PEWSEY, SEGLETES, LEE, CUNHAS and DOES 1 through 10, acting under color of law, proximately caused the wrongful seizure of MS. HADLEY's property—her phone, iPad, and laptop computer—without probable cause, in violation of her right to be free from such unlawful and unreasonable seizures under the Fourth Amendment to the United States Constitution.

211.    As of this date, MS. HADLEY has not been returned her phone, iPad or laptop computer.

212.    MS. HADLEY suffered damages as a result of Defendants' unreasonable and unremedied seizure of her personal effects.

213.    To the extent the supervisors of Defendants PEWSEY,SEGLETES, LEE, CUNHA and DOES 1-10, who supervised them at material and relevant times, knew, should have known, or had reason to know of Defendants' constitutionally violative conduct, as alleged above, or their propensity to engage in such conduct, such supervisors failed to prevent the unconstitutional acts of said Defendants and failed to properly supervise, thus

rendering them liable both directly and in their capacity as supervisor. Thus, any supervisors that failed to prevent the unconstitutional acts of said Defendants and failed to properly supervise them are liable directly and in their capacity as a supervisor.

214.    The Defendants named in this cause of action subjected MS. HADLEY to their wrongful conduct, depriving MS. HADLEY of the rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of Plaintiff would be violated by their acts and/or omissions.

215.    In committing the acts alleged above, the individually named Defendants and DOE Defendants acted maliciously and/or were guilty of a wanton and reckless disregard for the rights, safety, and emotional well-being of MS. HADLEY, and by reason thereof, MS. HADLEY is entitled to punitive damages and penalties allowable under 42 U.S.C. § 1983 and other state and federal law against these individual Defendants.

**FOURTH CAUSE OF ACTION**
**UNCONSTITUTIONAL CUSTOM, PRACTICE, POLICY**
**Under 42 U.S.C. § 1983 and *Monell***
**PLAINTIFF MICHELLE HADLEY AGAINST DEFENDANT CITY OF ANAHEIM**

216.    Plaintiff hereby realleges and incorporates by reference the allegations set forth in paragraphs 1-215, inclusive, above, as if set forth in full herein.

217.    MS. HADLEY has a right under the Due Process clause of the Fourteenth Amendment to be protected from procedures, information systems, or conduct that foreseeably leads to wrongful arrest and detention without specific protective procedures in place. The procedures, information systems or conduct foreseeably leading to wrongful arrest are the APD's handling of digital evidence. MS. HADLEY put agents of the CITY OF ANAHEIM on notice of the error in her initial arrest and detention, and continued to do so until she was exonerated on January 9, 2017.

218. This action concerns, *inter alia*, the refusal of the CITY OF ANAHEIM to require the APD to utilize readily available information and existing systems and protocols to accurately and swiftly collect and analyze basic digital evidence, to verify headers of emails, to verify static IP addresses, to confirm the static IP address of known suspects, and overall to implement the most rudimentary of procedures when it comes to collecting and analyzing digital evidence, which process is administered, overseen or participated by APD, and to the failure to institute simple common-sense processes to ensure that the CITY OF ANAHEIM is not susceptible to criminals who try to weaponize law enforcement by substantiating their false accusations with digital evidence that could easily be verified as false. The CITY OF ANAHEIM's deliberate indifference to false accusations and constitutional violations caused by its faulty policies is evident from the newspaper articles and press releases in which the APD congratulates Defendant CUNHA for his work on the case even though Defendant CUNHA's constitutionally-violative conduct harmed MS. HADLEY. CITY OF ANAHEIM's indifference is further manifested by its refusal to do anything to prevent MS. HADLEY from being re-arrested as more false accusations and faked evidence accumulated.

219. On information and belief, the APD failed to implement readily available procedures for decreasing wrongful detention and the APD failed to institute procedural safeguards that would have prevented the deprivation of liberty. The APD's failure to institute reasonable quality control procedures for the timely and thorough collection and analysis of digital evidence demonstrates deliberate indifference to the Fourth and Fourteenth Amendment rights of innocent persons impersonated online and wrongfully accused of a crime not to be unlawfully seized and deprived of liberty.

220.    As a result of CITY OF ANAHEIM's failures to institute policies for APD officers to timely and competently collect and analyze digital evidence and failure to intelligently investigate foreseeable false accusations based on common-sense and exculpatory evidence, persons who are innocent are not only arrested, but face serious crimes and lengthy incarcerations.

221.    MS. HADLEY alleges, upon information and belief that the unconstitutional actions and/or omissions of Defendants PEWSEY, SEGLETES, LEE, and CUNHA, were pursuant to the following customs, policies, practices, and/or procedures of CITY OF ANAHEIM, stated in the alternative, which were directed, encouraged, allowed, and/or ratified by policy making officials for CITY OF ANAHIEM, including DOES 1-10:

a.    Failing to institute execute or enforce readily available procedures for decreasing the risk of erroneous arrest and detention of individuals falsely and maliciously accused of a crime in connection with CITY OF ANAHEIM;

b.    Failing to institute, execute, or enforce readily available procedures for properly investigating collecting and evaluating electronic evidence and which can rule out and exclude individuals who are not responsible for creating or disseminating electronic evidence used in a crime;

c.    Failing to enact and/or maintain and/or execute policies and procedures to ensure swift, thorough, comprehensive and timely warrants and returns to technology companies that are the custodians of evidence involved in a crime;

d.    Failing to institute a proper quality control system for collecting and evaluating electronic evidence;

e.    Failing to institute a quality control system that requires reliable

verification of electronic evidence to prevent or minimize the wrongful arrest of innocent persons;

f.      Failing to institute a quality control system that requires reliable verification of electronic evidence to prevent or minimize the wrongful arrest of innocent persons, *e.g.* for when a purported victim must send electronic evidence to law enforcement officers, when electronic evidence on a suspect's device subject to a search warrant gives a law enforcer probable cause to arrest;

g.      Failing to institute a quality control system that properly analyzes evidence that incriminates a fellow law enforcement officer;

h.      Failing to institute a quality control system that collects static IP information of the accused and the victim; particularly in situations of high risk of false accusations (*e.g.,* allegations of former domestic partners, the accused's protestations that it is a false accusation, failing to respond to inconsistent and implausible evidence such as using VPNs and spoof email accounts while also signing the accused's name on criminal communications).

i.      Failing to have and enforce necessary, appropriate, and lawful policies, procedures, and training programs to prevent or correct the unconstitutional conduct, customs, and procedures described in this Complaint and in the subparagraphs above, when the need for such was obvious, or when policymakers for CITY OF ANAHEIM knew or had reason to know of the need, with deliberate indifference to the rights and safety of MS. HADLEY and the public, and in the face of an obvious need for such policies, procedures and training programs.

222.    In the alternative, upon information and belief, Defendant CITY OF

ANAHEIM may have instituted policies or training addressing some or all of the topics listed above, but has through deliberate indifference to citizens' rights, failed to properly oversee, enforce, and/or properly carry out such policies or training.

223.    Additionally, these supervisors disregarded the consequences of a policy deficiency that they knew or had reason to know would proximately cause the violation of MS. HADLEY's (and other innocent people's) constitutional rights, which in fact did cause the violation of MS. HADLEY's rights.

224.    The above-described customs, policies, practices, and/or procedures of the CITY OF ANAHEIM were a moving force and/or a proximate cause of the deprivations of MS. HADLEY'S constitutional rights, as well as the damages suffered by MS. HADLEY as a result of these deprivations.

225.    The unconstitutional actions and/or omissions of the individually named defendants and DOES, were approved, tolerated and/or ratified by policy making officials for THE CITY OF ANAHEIM. MS. HADLEY expects the details of her ordeal have been revealed to the authorized policy makers within the CITY OF ANAHEIM, and that such policymakers have direct knowledge of the fact that MICHELLE HADLEY was wrongfully arrested and subjected to extreme liberty deprivations due to their employees' deliberate indifference and violations of her rights. Notwithstanding this suspected knowledge by the authorized policymakers within the CITY OF ANAHEIM, the authorized policymakers have approved of the named defendants and DOES' conduct and decisions in this matter to the extent such individuals were under their supervision, oversight, and have made a deliberate, conscious, and affirmative choice to endorse and ratify such conduct and decisions, and the basis for them, which resulted in the wrongful arrests and other liberty deprivations suffered

by MS. HADLEY. By so doing, the authorized policymakers within the CITY OF ANAHEIM have shown affirmative agreement with the conduct of individual Defendants and DOES under their supervision, and have ratified the unconstitutional acts of these individual Defendants, employees, and agents.

**FIFTH CAUSE OF ACTION**
**FAILURE TO TRAIN**
**Under 42 U.S.C. § 1983 and *Monell***
**PLAINTIFF MICHELLE HADLEY AGAINST DEFENDANT CITY OF ANAHEIM**

226.    MS. HADLEY re-alleges and herein incorporates by reference the allegations set forth in paragraphs 1-225 above.

227.    MS. HADLEY alleges, upon information and belief that the unconstitutional actions and/or omissions of Defendants PEWSEY, SEGLETES, LEE, and CUNHA, were caused by the following acts and omissions of the CITY OF ANAHEIM with regard to failing to train APD officers.

a.    Failing to institute, maintain, or effectively administer an appropriate training regimen on subjects such as: conducting reasonable, ade4quate, and thorough investigations—and processing documents and information and electronic evidence accurately and efficiently, as well as accurately and carefully verifying information—before setting into motion events that cause the seizure of a person and the other liberty deprivations that stem from an arrest and incarceration;

b.    Failing to execute a training regimen and policies that take into account the foreseeable consequences of setting into motion events that will cause the wrongful arrest, seizure, and imprisonment of innocent persons;

c.    Failing to institute, maintain, or effectively administer an appropriate training regimen on subjects such as conducting reasonable, adequate, and

67

thorough investigations and verifying necessary facts before taking actions that amount to or have the effect of invoking the awesome power of arrest and seizure.

228.    Defendant CITY OF ANAHEIM's failure to train APD officers to properly investigate online impersonation and other cybercrimes demonstrated deliberate indifference to the rights of those who are impersonated online and falsely accused of crimes, such as MS. HADLEY.

229.    The aforementioned failure to properly and adequately hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline its officers were a moving force and/or a proximate cause of the deprivations of MS. HADLEY'S clearly established and well-settled constitutional rights, as well as the damages suffered by MS. HADLEY.

**SIXTH CAUSE OF ACTION**
**CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS**
**Under 42 U.S.C. § 1985**
**AGAINST DEFENDANTS ANGELA DIAZ, IAN DIAZ, and CUNHA**

230.    Plaintiff repeats and re-alleges each and every allegation in paragraphs 1-229, inclusive, above, as if set forth in full herein.

231.    Upon information and belief, Defendants ANGELA DIAZ, IAN DIAZ and/or Detective CUNHA agreed to deprive MS. HADLEY of her Fourth Amendment right to be free of unreasonable seizures and her Fourteenth Amendment right to due process.

232.    As demonstrated above, the three actors performed numerous acts in furtherance of this conspiracy that a conspiracy can be inferred from: IAN and ANGELA DIAZ repeatedly filed false police reports and presented Detective CUNHA with false evidence tending to show that MS. HADLEY had committed crimes. Detective CUNHA, instead of performing his duties as an investigator and finding probable cause to arrest MS. HADLEY, simply agreed to believe IAN and ANGELA DIAZ and arrest MS. HADLEY

without probable cause. Detective CUNHA did so despite obvious evidence showing MS. HADLEY's innocence.

233.     As a result of this concerted action, MS. HADLEY was deprived of her Fourth Amendment and Fourteenth Amendment rights and suffered severe damages as a result of her arrest and protracted incarceration.

234.     In committing the acts alleged above, the individually named Defendants acted maliciously and/or were guilty of a wanton and reckless disregard for the rights, safety, and emotional well-being of MS. HADLEY, and by reason thereof, MS. HADLEY is entitled to punitive damages and penalties allowable under 42 U.S.C. § 1985 and other state and federal law against these individual Defendants.

## SEVENTH CAUSE OF ACTION
## VIOLATION OF CAL. CIVIL CODE § 52.1
### Under California State Law
## AGAINST DEFENDANTS CITY OF ANAHEIM, DEFENDANTS PEWSEY, SEGLETES, LEE, CUNHA, and DOES 1-10

235.     Plaintiff repeats and re-alleges each and every allegation in paragraphs 1-234, inclusive, above, as if set forth in full herein.

236.     By their actions, omissions, customs, and policies, Defendants CITY OF ANAHEIM, PEWSEY, SEGLETES, LEE, CUNHA, and DOES 1-10, acting in concert/conspiracy, as described above and with threat of intimidation and/or coercion, violated MS. HADLEY's rights under California Civil Code § 52.1 and the following clearly established rights under the United States Constitution and California Constitution and law:

     a.     MS. HADLEY'S rights to be free from an unreasonable seizure and her right not to be deprived of liberty or property without due process of law, as secured by the Fourth and Fourteenth Amendments to the United States Constitution and the California

Constitution, Article 1, Sections 7 and 13;

b.      The right to enjoy and defend life and liberty; acquire, possess, and protect property; and pursue and obtain safety, happiness, and privacy, as secured by California Constitution, Article 1, Section 1; and

c.      The right to protection from bodily restraint, harm, or personal insult, as secured by California Civil Code § 43.

237.    Separate from, and above and beyond, Defendants' attempted interference with and violation of MS. HADLEY'S rights by the following conduct, among other conduct, constituting threat, intimidation, or coercion: intentionally and/or with deliberate indifference, causing Plaintiff to be subjected to unreasonable seizures, visual body cavity inspections, incarceration, and other liberty deprivations.

238.    Defendant CITY OF ANAHEIM is not sued directly in this cause of action but is named because the CITY OF ANAHEIM is vicariously liable pursuant to California Government Code §815.2.

239.    As a direct and proximate result of the actions of Defendants, as complained of herein, MS. HADLEY was: 1) substantially physically, mentally and emotionally injured, and suffered great physical, mental and emotional injury, distress, pain and suffering; 2) incurred medical and psychological costs, bills and expenses, 3) attorney's fees and associated litigation and other related costs, 4) incurred lost wages/profits, and 5) incurred other special and general damages and expenses, in an amount to be proven at trial.

**EIGHTH CAUSE OF ACTION**
**FALSE ARREST/FALSE IMPRISONMENT**
**Under California State Law**
**PLAINTIFF MICHELLE HADLEY AGAINST ALL DEFENDANTS**

240.    Plaintiff repeats and re-alleges each and every allegation in paragraphs 1-

239, inclusive, above, as if set forth in full herein.

241.    The above-described acts and omissions constituted the nonconsensual, intentional confinement of MS. HADLEY.

242.    The nonconsensual, intentional confinement of MS. HADLEY was performed without lawful privilege, as there was never probable cause to arrest or detain MS. HADLEY.

243.    The nonconsensual, intentional confinement of MS. HADLEY lasted for an appreciable period of time—almost three months in jail.

244.    By the above-described acts and/or omissions and/or failures to supervise and/or failure to institute and execute adequate training and policies on the part of Defendants, as alleged herein, Plaintiff was falsely arrested and falsely imprisoned, thereby entitling MS. HADLEY to damages pursuant to California law.

245.    The aiding and abetting and/or failure to intervene and/or failure to prevent this arrest gives rise to liability on the part of other to-be-identified DOE defendants.

246.    Defendant CITY OF ANAHEIM is not sued directly in this cause of action, but is named because CITY OF ANAHEIM is vicariously liable pursuant to California Government Code §815.2.

247.    As a direct and proximate result of the foregoing wrongful acts, MS. HADLEY was 1) substantially physically, mentally and emotionally injured, and suffered great physical, mental and emotional injury, distress, pain and suffering; 2) incurred medical and psychological costs, bills and expenses, 3) attorney's fees and associated litigation and other related costs, 4) incurred lost wages/profits, and 5) incurred other special and general damages and expenses.

248.    MS. HADLEY is therefore entitled to general and compensatory damages in an amount to be proven at trial, as well as punitive damages against Defendants in their individual capacities. No punitive damages are sought against the CITY OF ANAHEIM directly.

**NINTH CAUSE OF ACTION**
**BATTERY**
**Under California State Law**
**PLAINTIFF MICHELLE HADLEY AGAINST DEFENDANTS PEWSEY, SEGLETES, LEE, and CUNHA, and DOES 1-10**

249.    Plaintiff repeats and re-alleges each and every allegation in paragraphs 1-248, inclusive, above, as if set forth in full herein.

250.    The actions committed by Defendants PEWSEY, SEGLETES, LEE, CUNHA, and DOES 1-10, constituted the unjustified, non-consensual use of unlawful force and violence upon MS. HADLEY, and therefore constituted a battery of her by said above-referenced defendants under California state law.

251.    As a direct and proximate result of the actions of all Defendants named in this cause of action, MS. HADLEY was 1) substantially physically, mentally and emotionally injured, and suffered great physical, mental and emotional injury, distress, pain and suffering; 2) incurred medical and psychological costs, bills and expenses, 3) attorney's fees and associated litigation and other related costs including bails costs and other associated costs and expenses, 4) incurred lost wages/profits, and 5) incurred other special and costs, in an amount to be proven at trial.

252.    The actions of Defendants, as complained of herein, were committed maliciously oppressively and constituted despicable conduct; sufficient for an award of punitive/exemplary damages against all defendants named in this action, in an amount to be

72

1   proven at trial.

2        253.   Defendants law enforcement officers are liable to MS. HADLEY for said

3   battery on her pursuant to Cal. Government Code §§815.2(a), 815.6, 820, 820.8 and

4   otherwise pursuant to common law.

5
                        **TENTH CAUSE OF ACTION**
6                               **ASSAULT**
                        **Under California State Law**
7   **PLAINTIFF MICHELLE HADLEY AGAINST DEFENDANTS PEWSEY,**
        **SEGLETES, LEE, and CUNHA, and DOES 1-10**
8

9        254.   Plaintiff repeats and re-alleges each and every allegation in paragraphs 1-

10  253, inclusive, above, as if set forth in full herein.

11
         255.   The actions committed by Defendants, above-described, constituted an
12
    assault of MS. HADLEY under California state law, as MS. HADLEY was unlawfully
13
    placed in reasonable fear of receiving an imminent violent injury by all Defendants.
14

15       256.   Said Defendants named in this cause of action are liable to MS. HADLEY,

16  under California state law for said assaults, pursuant to Cal. Government Code §§815.2(a),

17  815.6, 820, 820.8, pursuant to the California Constitution, and otherwise pursuant to the

18  common law.

19
         257.   As a direct and proximate result of the actions of all Defendants, MS.
20
    HADLEY was 1) substantially physically, mentally and emotionally injured, and suffered
21

22  great physical, mental and emotional injury, distress, pain and suffering; 2) incurred medical

23  and psychological costs, bills and expenses, 3) attorney's fees and associated litigation and

24  other related costs including bails costs and other associated costs and expenses, 4) incurred

25  lost wages/profits, and 5) incurred other special and costs, in an amount to be proven at trial.

26
         258.   The actions of Defendants, as complained of herein, were committed
27

28

                                    73

maliciously oppressively and constituted despicable conduct; sufficient for an award of punitive/exemplary damages against all defendants named in this cause of action, in an amount to be proven at trial.

**ELEVENTH CAUSE OF ACTION**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**Under California State Law**
**PLAINTIFF MICHELLE HADLEY AGAINST DEFENDANTS ANGELA DIAZ**
**AND IAN DIAZ**

259.    Plaintiff repeats and re-alleges each and every allegation in paragraphs 1-258, inclusive, above, as if set forth in full herein.

260.    ANGELA DIAZ and IAN DIAZ engaged in outrageous conduct by framing MS. HADLEY for several crimes she did not commit.

261.    ANGELA DIAZ and IAN DIAZ intended to cause MS. HADLEY to suffer emotional distress by making her the subject of a police investigation which resulted in her being detained in jail for crimes she did not commit.

262.    ANGELA DIAZ and IAN DIAZ knew and/or should have known that MS. HADLEY, as an upstanding citizen who had no experience with the criminal justice system, was particularly susceptible to suffering severe emotional distress from being incarcerated for crimes she did not commit.

263.    As a direct and proximate result of the actions of ANGELA DIAZ and IAN DIAZ, MS. HADLEY suffered severe emotional distress, including anxiety, paranoia, sleeplessness, humiliation, and depression.

264.    MS. HADLEY's debilitating emotional distress resulted in special damages including, but not limited to, lost wages and bills for psychiatric treatment.

/ / /

**TWELFTH CAUSE OF ACTION**
**NEGLIGENCE**
**Under California State Law**
**PLAINTIFF MICHELLE HADLEY AGAINST ALL DEFENDANTS**

265.     Plaintiff repeats and re-alleges each and every allegation in paragraphs 1-264, inclusive, above, as if set forth in full herein.

266.     The actions by Defendants as complained of herein and as described above, also constituted a breach of Defendants' duty to use due care toward MS. HADLEY.

267.     Moreover, Defendant CITY OF ANAHEIM breached its duty of care owed to Plaintiff and to member of the public similarly situated, by unlawfully arresting and asserting excessing force against community members.

268.     As a direct and proximate result of the actions of all Defendants, MS. HADLEY was 1) substantially physically, mentally and emotionally injured, and suffered great physical, mental and emotional injury, distress, pain and suffering; 2) incurred medical and psychological costs, bills and expenses, 3) attorney's fees and associated litigation and other related costs including bails costs and other associated costs and expenses, 4) incurred lost wages/profits, and 5) incurred other special and costs, in an amount to be proven at trial.

269.     The actions of Defendants, as complained of herein, were committed maliciously oppressively and constituted despicable conduct; sufficient for an award of punitive/exemplary damages against all defendants.

**THIRTEENTH CAUSE OF ACTION**
**MALICIOUS PROSECUTION**
**Under California State Law**
**PLAINTIFF MICHELLE HADLEY AGAINST DEFENDANTS IAN DIAZ AND ANGELA DIAZ**

270.     Plaintiff repeats and re-alleges each and every allegation in paragraphs 1-269, inclusive, above, as if set forth in full herein.

271.    Defendants ANGELA DIAZ and IAN DIAZ commenced numerous actions against MS. HADLEY, including petitions for Restraining Orders and over twenty false police reports.

272.    Defendants ANGELA DIAZ and IAN DIAZ pursued their claims against MS. HADLEY with subjective malice and without objective probable cause.

273.    No reasonable persons in the positions of Defendants ANGELA DIAZ and IAN DIAZ could have believed there were reasonable grounds to bring the claims against MS. HADLEY.

274.    All actions were resolved in favor of MS. HADLEY as she was fully exonerated of the claims brought by ANGELA DIAZ and IAN DIAZ.

275.    As a direct and proximate result of the actions of Defendants ANGELA DIAZ and IAN DIAZ, MS. HADLEY was 1) substantially physically, mentally and emotionally injured, and suffered great physical, mental and emotional injury, distress, pain and suffering; 2) incurred medical and psychological costs, bills and expenses, 3) incurred attorney's fees and associated litigation and other related costs including bails costs and other associated costs and expenses, 4) incurred lost wages/profits, and 5) incurred other special and costs, in an amount to be proven at trial.

276.    The actions of Defendants, as complained of herein, were committed maliciously and oppressively, and constituted despicable conduct; sufficient for an award of punitive/exemplary damages against all defendants, in an amount to be proven at trial.

/ / /

/ / /

/ / /

## FOURTEENTH CAUSE OF ACTION
## DEFAMATION
## Under California State Law
## PLAINTIFF MICHELLE HADLEY AGAINST DEFENDANTS ANGELA DIAZ AND IAN DIAZ

277.　Plaintiff repeats and re-alleges each and every allegation in paragraphs 1-276, inclusive, above, as if set forth in full herein.

278.　Defendants ANGELA DIAZ and IAN DIAZ engaged in communications to third parties that were false, defamatory, unprivileged and with a natural tendency to injure or cause special damage.

279.　Defendants ANGELA DIAZ and IAN DIAZ made the defamatory communications to third parties, such as police officers, who understood the defamatory meaning of the statements and their application to MS. HADLEY.

280.　Defendants ANGELA DIAZ and IAN DIAZ slandered MS. HADLEY by making false and unprivileged publications to police, orally uttered, which accused MS. HADLEY of having committed several crimes.

281.　As falsely accusing another of a crime is *per se* defamatory, damages are presumed.

282.　In addition to presumed damages, as a direct and proximate result of the actions of Defendants ANGELA DIAZ and IAN DIAZ, MS. HADLEY was 1) substantially physically, mentally and emotionally injured, and suffered great physical, mental and emotional injury, distress, pain and suffering; 2) incurred medical and psychological costs, bills and expenses, 3) attorney's fees and associated litigation and other related costs including bails costs and other associated costs and expenses, 4) incurred lost wages/profits, and 5) incurred other special and costs.

283.   The actions of Defendants, as complained of herein, were committed maliciously oppressively and constituted despicable conduct; sufficient for an award of punitive/exemplary damages against all defendants, in an amount to be proven at trial.

## FIFTEENTH CAUSE OF ACTION
## CIVIL CONSPIRACY
### Under California State Law
## PLAINTIFF MICHELLE HADLEY AGAINST DEFENDANTS ANGELA DIAZ, IAN DIAZ, AND CUNHA

284.   Plaintiff repeats and re-alleges each and every allegation in paragraphs 1-283, inclusive, above, as if set forth in full herein.

285.   Defendants ANGELA DIAZ and IAN DIAZ and/or Detective CUNHA agreed to commit the unlawful, tortious acts of false imprisonment, malicious prosecution and infliction of emotional distress against MS. HADLEY.

286.   As demonstrated above, the three actors performed numerous acts that reflect and furthered the apparent agreement to harm MS. HADLEY: IAN and ANGELA DIAZ repeatedly filed false police reports and presented Detective CUNHA with false evidence tending to show that MS. HADLEY had committed crimes. Detective CUNHA, instead of performing his duties as an investigator and finding probable cause to arrest MS. HADLEY, simply agreed to believe IAN and ANGELA DIAZ, resulting in MS HADLEY's false arrest, malicious prosecution, and severe emotional distress.

287.   As a result of this agreement and concerted action, MS. HADLEY suffered severe economic and emotional damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the following relief against each and every Defendant herein, jointly and severally:

78

1        a.    Compensatory damages in an amount according to proof, which is

2  fair, just, and reasonable;

3        b.    Punitive damages under federal law and California law, in an

4  amount according to proof and which is fair, just, and reasonable against all Defendants,

5  except the public entity Defendants;

6

7        c.    Attorney's fees and costs of suit under 42 U.S.C. § 1988;

8        d.    Attorney's fees and costs of suit under California Civil Code §§ 52

9  (b)(3) and 52.1(h);

10        e.    All other damages, penalties, costs, interest, and attorneys' fees as

11  allowed by 42 U.S.C. §§ 1983 and 1988; California Code of Civil Procedure § 1021.5;

12

13  California Civil Code §§ 52 et seq. and 52.1; and as otherwise may be allowed by California

14  and/or federal law; and,

15        f.    For such other and further relief as the Court deems just and proper.

16      Respectfully submitted on December 20, 2018.

17

18               **McLetchie Law**

19          By:    */S/ Margaret A. McLetchie*

20               Margaret A. McLetchie, CA Bar No. 223240
             *Attorney for Plaintiff, Michelle Hadley*

21

22               **C. A. Goldberg, PLLC**

23          By:    */S/ Carrie A. Goldberg*

24               Carrie A. Goldberg
             *Attorney for Plaintiff, Michelle Hadley*

25               (Pro hac vice pending)

26

27

28